# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

ERNEST EUGENE PHILLIPS, JR.,        )
                                    )
                        Petitioner, )
                                    )
vs.                                 )       Case No. CIV-01-45-JHP
                                    )
MARTY SIRMONS, Warden, Oklahoma     )
State Penitentiary,                 )
                                    )
                        Respondent. )

## OPINION AND ORDER

Petitioner, Ernest Eugene Phillips, Jr., was convicted following a jury trial, in the District Court of Bryan County, Case No. CRF-96-284, of First Degree Felony Murder. In accordance with the jury's verdict, Petitioner was, on May 7, 1997, sentenced to death. On direct appeal, the Oklahoma Court of Criminal Appeals affirmed his conviction and death sentence. *Phillips v. State*, 989 P.2d 1017 (Okla. Crim. App. 1999), *cert. denied*, 531 U.S. 837, 121 S.Ct. 97, 148 L.Ed.2d 56 (2000).

On June 21, 1999, Petitioner filed an Application for Post-Conviction Relief in Oklahoma Court of Criminal Appeals Case No. PC-99-252. On December 22, 1999, in an unpublished opinion, the court denied relief. Petitioner now seeks relief from his death sentence pursuant to 28 U.S.C. § 2254.

As a preliminary matter the Court notes that Marty Sirmons is currently the Warden at Oklahoma State Penitentiary. The Court finds, pursuant to Rule 25(d)(1) of the Federal

Rules of Civil Procedure, Marty Sirmons is the proper substituted Respondent and the Court Clerk shall be directed to note such substitution on the record.

## I. RECORDS REVIEWED

This Court has reviewed (1) the Petition for Writ of Habeas Corpus and Opening Brief in Support thereof; (2) the Response to the Petition filed by the State of Oklahoma; (3) the Reply to the Response filed by the Petitioner; (4) Petitioner's Amendment to his Petition for Writ of Habeas Corpus; (5) the Response to Petitioner's Amended Petition; (6) the Reply to the Response to Petitioner's Amendment; (7) the Original Record from the Bryan County District Court, consisting of 4 volumes; (8) transcript of Initial Appearance held on July 22, 1996; (9) transcript of Preliminary Hearing held on November 18, 1996; (10) transcript of Motions Hearing held on January 16, 1997; (11) transcript of proceedings held on April 8, 1997; (12) transcript of Competency Hearing held on April 22, 1997; (13) transcript of Jury Trial begun on April 28, 1997, consisting of six volumes and all exhibits introduced therein;[1] (14) an Application for Evidentiary hearing on Sixth Amendment Claim; (15) Application for Post-Conviction Relief and appendixes thereto; (16) Opinion Affirming Denial of Post-Conviction Relief; and (17) all other records before the Oklahoma Court of Criminal Appeals which were transmitted to this Court, including the briefs filed on Petitioner's behalf with the Oklahoma Court of Criminal Appeals in both the direct appeal and the post-conviction

---

[1]The jury trial transcript was completed by two court reporters. The first reporter labeled the transcript he prepared as "Transcript of: Trial as taken on the 28th day of April, 1997," then put the transcript in three separate report covers. For ease of reference these will be referred to as Volumes I (pages 2 - 199), II (pages 200-399) and III (pages 400-490). The second reporter labeled the transcript she prepared as "Transcript of Trial Proceedings April 30, 1997." This transcript was also placed in three separate report covers. For ease of reference, these will be referred to as Volumes IV (pages 1-200), V (pages 201-400), and VI (401-586).

appeal, as well as other miscellaneous pleadings. Although not listed specifically, all other items filed in this case have been reviewed. See Inventory of State Court Record, Docket No. 47, filed on August 23, 2004.

As a result, this Court finds that the records, pleadings and transcripts of the state proceedings provide all the factual and legal authority necessary to resolve the matters in the petition and, therefore, an evidentiary hearing is unnecessary. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)(*Sumner I*); *Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982)(*Sumner II*).

## II. STATEMENT OF THE FACTS

Historical facts found by the state court are presumed correct, unless the petitioner rebuts the same by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Since Petitioner has failed to rebut the facts, as set forth by the Oklahoma Court of Criminal Appeals, this Court hereby adopts the following factual findings made by the Oklahoma appellate court.

> [Petitioner] was convicted of the premeditated murder of seventeen (17) year old Jason McFail. On July 17, 1996, Brian Ezell and his parents traveled to Sherman, Texas, to pick up McFail so he could return with them to their home in Durant and visit for a few days. During the evening hours of July 19, Ezell and McFail ate dinner, visited with Ezell's parents and went to church. The young men then picked up Ezell's cousin, Shannon Hearn, and went to get gas for the car. On the way, they saw some friends of Ezell's parked at the Love's Country Store. Ezell drove over to the Love's and all three young men exited the car to visit with Davida Clark and Christina Chambers. As the young people visited, they heard [Petitioner] shouting obscenities as he approached them. [Petitioner] shouted "you niggers need to get your asses the hell out of town" and "run nigger run."

[Petitioner] first approached McFail. McFail backed up, asked [Petitioner] to leave him alone and said he was leaving the area. [Petitioner] pushed McFail in the chest and onto Ezell's car. [Petitioner], still repeating the obscenities, next approached Ezell and pushed him up against Chambers' nearby car. Ezell got up and backed away from [Petitioner] and in so doing observed a knife in [Petitioner's] hand. Ezell walked around the corner to the nearby apartment of some friends to get help. When he returned he saw [Petitioner] chasing Hearn. Ezell, who described Hearn as "kind of slow" mentally, shouted at him to run toward the apartment. Ezell escorted Hearn into the safety of the apartment.

When Ezell returned to the scene, [Petitioner] had entered the convenience store and asked for a light for his cigarette. He continued his reign of obscenities, directing them at the store clerks. One of the clerks told [Petitioner] to leave and threatened to call the police. [Petitioner] shouted "nigger lover" and lunged at the clerk. [Petitioner] then turned around and left the store.

Meanwhile, McFail had approached Clark and said he thought he had been stabbed. When he lifted his shirt, blood poured from his chest each time his heart beat. He collapsed on Clark who laid him on the ground. McFail was conscious, but unable to speak. He could only look at Clark and cry. As [Petitioner] left the convenience store, he walked past the gravely injured McFail lying on the ground and said "that's right nigger", "how do you like that you fucking nigger" and "feels good don't it."

The first police officers on the scene found McFail conscious and attempted to question him, but he could only gasp for air. While officers attempted to question McFail, he took a big breath and closed his eyes. Officers were unable to find a pulse. The ambulance arrived soon thereafter, but McFail never responded to any life saving procedures and became the victim of this horrific, senseless act of violence.

Upon leaving the convenience store, [Petitioner] headed for a nearby bar. In talking with the bartender he asked her what she would do if she had done something really bad. [Petitioner] then commented he would turn himself in to the police the next day. That next day, July 20, 1996, [Petitioner] was arrested at his brother's home outside of Blue, Oklahoma. Once in custody, [Petitioner] told police he had been working in Louisiana and had been in Durant only 3 or 4 days. He denied any involvement in the stabbing, stating he had been with friends at various bars the evening of July 19.

*Phillips,* 989 P.2d at 1024-1025 (Okla. Crim. App. 1999).

### III. PETITIONER'S CLAIMS FOR RELIEF

The Petition (Doc. #18) filed herein on October 1, 2001 raises fifteen (15) grounds for relief. On November 6, 2001, Respondent, by and through the Attorney General of the State of Oklahoma, filed a Response (Doc. #21) to the Petition. Petitioner filed a Reply (Doc. #27) on February 28, 2002. Specifically, Petitioner alleges the following errors entitle him to habeas relief: (1) his constitutional rights were violated when the jury found the existence of the "heinous, atrocious, or cruel" aggravator and the "continuing threat" aggravator; (2) the trial court violated his Eighth and Fourteenth Amendment rights by refusing to instruct the jury on the lesser included offenses of second degree murder and/or first degree manslaughter; (3) he was deprived of his right to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution as a result of the procedures employed in determining he was competent to stand trial when, according to Petitioner, he was actually incompetent to stand trial; (4) the first stage jury instructions deprived Petitioner of his constitutional right to a fair trial and due process of law; (5) he was deprived of an opportunity to present a defense and call witnesses in violation of the Sixth and Fourteenth Amendments of the United States Constitution; (6) the trial court's failure to instruct the jury that Petitioner had the right not to testify violated his Fifth, Sixth and Fourteenth Amendment rights; (7) the evidence was insufficient to prove the malice aforethought element of first degree murder; (8) Petitioner's due process rights were violated when the prosecution impermissibly defined and diminished the "reasonable doubt" standard during voir dire; (9) his due process rights were violated when the state court sanctioned the pretextual and invalid arrest of Petitioner; (10) the admission of highly prejudicial and

5

irrelevant evidence deprived Petitioner of his rights to a fair trial and due process; (11)

misinstruction of the jury during the penalty phase of trial  was a violation of Petitioner's

rights under the Eighth and Fourteenth Amendments; (12) the victim impact evidence

violated Petitioner's due process and Eighth Amendment rights; (13) ineffective assistance

of counsel violated Petitioner's Sixth, Eighth and Fourteenth Amendment rights; (14)

requiring Petitioner to wear a "stun belt" during the court proceedings violated his Fifth,

Eighth, and Fourteenth Amendment rights; and (15) the cumulative effect of the afore-

mentioned errors deprived Petitioner of his constitutional rights under the Eighth and

Fourteenth Amendments of the United States Constitution.  Additionally, on April 15, 2004,

Petitioner filed an Amendment to his Petition (Doc. # 43) alleging the failure of the trial court

to instruct the jury that it had to find, beyond a reasonable doubt, that the aggravating

circumstances outweigh any mitigating circumstances before it could impose the death

penalty violated his Sixth, Eighth, and Fourteenth Amendment rights.

## IV.  STANDARD OF REVIEW

Since Petitioner filed his petition in October, 2001, this case is governed by the statute

as amended by the Anti-Terrorism and Effective Death Penalty Act (AEDPA).  See *Lindh*

*v. Murphy,* 521 U.S. 320, 326-327, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997).

The AEDPA made significant changes to federal habeas corpus law, specifically

delineating the circumstances under which a federal court may grant habeas relief.  Under

the AEDPA's provisions, this Court is precluded from granting habeas relief on any claim

adjudicated on the merits by a state court

unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Furthermore, determinations of factual issues made by state courts are presumed correct and a habeas petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 592 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court interpreted the above-quoted statute holding, in order for a petitioner to obtain federal habeas relief, the petitioner must first demonstrate that his case satisfies the conditions set by § 2254(d)(1). A decision can be "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court case law or "if the state confronts a set of facts that are materially indistinguishable from" a decision of the Supreme Court, but nonetheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (citing *Williams,* 529 U.S. at 405-406). Whereas, the "unreasonable application" provision is implicated when "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407, 120 S.Ct. at 1520. "The question under

the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro v. Landrigan*, — U.S. —, 127 S.Ct.1933, 1939, 167 L.Ed.2d 836 (2007), *reh. denied*, — U.S. —, 128 S.Ct. 7, 168 L.Ed.2d 784 (2007). Finally, the Supreme Court has made it clear that a state court is not required to cite Supreme Court case law, or even be aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]." *Early*, 537 U.S. at 8, 123 S.Ct. at 365.

## V.  PETITIONER'S ALLEGED ERRORS

### 1.  Sufficiency of the evidence

In his seventh proposition of error, Petitioner asserts the evidence was insufficient to prove the malice aforethought element of first degree murder.  Additionally, in his first proposition of error, Petitioner alleges the evidence was insufficient to support both the "heinous, atrocious or cruel" and the "continuing threat" aggravating circumstances. Respondent concedes Petitioner has exhausted these issues, but claims the evidence was sufficient to support all of the jury's findings.  Further, Respondent argues Petitioner has failed to establish that the adjudication of these matters by the Oklahoma Court of Criminal Appeals resulted in a decision that was contrary to, or an unreasonable application of clearly established federal law as determined by the Supreme Court or was an unreasonable determination of the facts in light of the evidence introduced at trial.  Therefore, Respondent urges this Court to deny relief on each of these claims.

The United States Supreme Court held in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), *reh. denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), a federal habeas proceeding challenging the sufficiency of the evidence in a state trial, that a reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Further, the Court indicated following conviction, a judicial review of the "evidence is to be considered in the light most favorable to the prosecution." *Id.* In *Lewis v. Jeffers*, 497 U.S. 764, 782, 110 S.Ct. 3092, 3103, 111 L.Ed.2d 606 (1990), the Court said the principles enunciated in *Jackson* apply with equal force to federal habeas review of a state court's finding of aggravating circumstances.

> Although aggravating circumstances are not "elements of any offense, see *Walton, Id.,* 497 U.S., at 648-649, 110 S.Ct., at 3054-3055, the standard of federal review for determining whether a state court has violated the Fourteenth Amendment's guarantee against wholly arbitrary deprivations of liberty is equally applicable in safeguarding the Eighth Amendment's bedrock guarantee against the arbitrary or capricious imposition of the death penalty. Like findings of fact, state court findings of aggravating circumstances often require a sentencer to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson, supra*, 443 U.S., at 319, 99 S.Ct., at 2789.

*Lewis*, 497 U.S. at 782, 110 S.Ct. at 3103.

> Further, the Tenth Circuit has stressed that review, under *Jackson*, is

> 'sharply limited' and a court 'faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' *Wright v. West*, 505 U.S. 277, 296-97, 112 S.Ct. 282, 2492-03, 120 L.Ed.2d 225 (1992), *citing Jackson*, 443 U.S. at 326, 99 S.Ct. at 2792. The Court may not weigh conflicting

evidence nor consider the credibility of witnesses. Rather, the Court must 'accept the jury's resolution of the evidence as long as it is within the bounds of reason.' *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993).

*Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996). Thus, this Court's review is limited to determining whether the Oklahoma Court of Criminal Appeals' decision that there was sufficient evidence was contrary to or an unreasonable application of *Jackson*. 28 U.S.C. § 2254(d)(1).

### A. Sufficiency of Evidence re: Malice Aforethought

Based upon the evidence presented in Petitioner's trial, this Court finds there was sufficient evidence introduced to prove the malice aforethought element of first degree murder. Oklahoma defines malice aforethought murder as follows:

A person commits murder in the first degree when that person unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof.

OKLA. STAT. tit. 21, § 701.7(A) (1996). Additionally, OKLA. STAT. tit. 21, § 702 provides: "A design to effect death is inferred from the fact of the killing, unless the circumstances raise a reasonable doubt whether such design existed." In *Young v. Sirmons*, 486 F.3d 655 (10th Cir. 2007), the Tenth Circuit summarized Oklahoma law dealing with the issue of intent, indicating in Oklahoma:

. . . . a jury is permitted to draw inferences of subjective intent from a defendant's objective acts. Thus, even when a defendant ... denies having the requisite intent, a jury may disbelieve the defendant if [the defendant's] words and acts in the light of all the circumstances make [the defendant's] explanation seem improbable. Second, a jury is permitted to find that a

defendant intends those consequences which he announces a desire to accomplish.

*Id.*, at pp. 666-667 (citations omitted).

Further, OKLA. STAT. tit. 21, § 703 indicates premeditation may be formed instantly prior to committing any act of aggression. *See also*, *Powell v. State*, 906 P.2d 765, 775 (Okla. Crim. App. 1995), *cert. denied*, 517 U.S. 1144, 116 S.Ct. 1438, 134 L.Ed.2d 560 (1996).

In addressing this issue during Petitioner's direct appeal, the Oklahoma Court of Criminal Appeals found the following evidence supported Petitioner's conviction for first degree malice aforethought murder:

> Viewing the evidence in this case under the above law leads us to the 'unmistakable conclusion that [Petitioner] fully intended the consequences of his acts.' An obviously agitated [Petitioner] approached the unarmed victim shouting obscenities and ignoring the victim's pleas to be left alone. [Petitioner] stabbed the victim on the left side of his chest. [Petitioner] walked over the fallen victim as he both entered and exited the convenience store. As he exited, [Petitioner] was heard to say "that's right nigger", "how do you like that you fucking nigger" and "feels good don't it." If [Petitioner's] words were more akin to 'fighting words' as he argues, and he did not intend for anyone to die, then he could have stabbed the victim somewhere other than the heart. However, the uncontradicted evidence concerning the location of the victim's wound and [Petitioner's] conduct toward the victim, both before and after the stabbing, clearly show he intended to kill the victim. Accordingly, we find the evidence sufficient to support the conviction for first degree malice aforethought murder.

*Phillips*, 989 P.2d at 1029 (citation omitted).

This Court's review of the trial transcripts supports the Oklahoma court's decision. The fact Petitioner stabbed the victim in the left side of his chest and then left him lying on

the ground bleeding to death without attempting to render aid to him was clearly sufficient to establish Petitioner intended to kill the victim. Given this evidence, this Court cannot conclude that the Oklahoma Court's application of *Jackson* was objectively unreasonable or that the jury's decision was outside the bounds of reason. Therefore, this Court finds Petitioner has failed to establish that he is entitled to habeas relief on this issue.

### B. Sufficiency of Evidence re: "Heinous, Atrocious or Cruel" Aggravator

In his first proposition of error, Petitioner asserts the evidence was insufficient to support the "heinous, atrocious or cruel" aggravating circumstance.[2] Petitioner claims because there was no evidence that he "repeatedly stabbed the victim, or beat him, or lit him on fire, or any number of things" this murder could not have been "heinous, atrocious, or cruel." Pet. at p. 31. In rejecting Petitioner's claim on direct appeal, the Oklahoma Court of Criminal Appeals found:

> The evidence in the present case showed [Petitioner] unexpectedly and without invitation approached the group of teenagers, shouting racial slurs and threats of harm. The victim pleaded with [Petitioner] to leave him and his friends alone and was attempting to leave the scene when [Petitioner] stabbed him in the chest. The victim, aware of his injury as blood poured from his chest with each heartbeat, sought assistance from one of his friends. Although he collapsed shortly thereafter, the evidence shows the victim was conscious for a period of time. As the victim lay on the ground bleeding and gasping for air, [Petitioner] walked past him and said "that's right nigger", "how do you like that you fucking nigger" and "feels good don't it." Medical emergency personnel attempted to communicate with the conscious victim, but were unable to effectively do so because of the victim's inability to get enough breath to speak. Despite being unable to talk, tears flowed from the victim's eyes as he attempted to communicate.

---

[2]Oklahoma's "heinous, atrocious or cruel" aggravating factor authorizes the imposition of the death penalty if the jury finds "the murder was especially heinous, atrocious, or cruel." OKLA. STAT. tit. 21, § 701.12(4) (1981).

* * * * *

Considering the unprovoked manner of the killing in the present case; the conscious suffering of the victim, both physically and emotionally; the attitude of the killer as evidenced by [Petitioner's] taunts and verbal threats, both before and after the stabbing; and the pitiless nature of this crime, we cannot say, construing the evidence in the light most favorable to the state, that the jury's finding of the heinous, atrocious or cruel aggravator was not supported by sufficient evidence.

*Phillips*, 989 P.2d at 1039-1040.

Before a jury can find that a murder was especially heinous, atrocious or cruel under Oklahoma law, there must be proof that death was preceded by torture or serious physical abuse. *Turrentine v. State*, 965 P.2d 955, 976 (Okla. Crim. App. 1998). *See also*, OKLA. STAT. tit. 21, § 701.12(4) (1981). Two kinds of cases have been identified by the Oklahoma Court of Criminal Appeals in which "torture or serious physical abuse" will be found: "those characterized by the infliction of 'great physical anguish' and those characterized by the infliction of 'extreme mental cruelty.'" *Thomas v. Gibson*, 218 F.3d 1213, 1226 (10th Cir. 2000) (citing *Cheney v. State*, 909 P.2d 74, 80 (Okla. Crim. App. 1995)). In *Spears v. State*, 900 P.2d 431, 443 (Okla. Crim. App. 1995), the court held "[t]o support a finding of serious physical abuse, the State must show the victim endured *conscious* physical suffering prior to death." (emphasis in original) *See also*, *Cheney v. State*, 909 P.2d 74, 81 (Okla. Crim. App. 1995) (Footnote 20 contains a summary of Oklahoma cases requiring conscious suffering to support evidence of heinous, atrocious or cruel aggravating circumstance).

Although Petitioner urges this Court to adopt the reasoning of the dissenting judge and find that the murder "did not involve any acts of injury or cruelty beyond the scope of the act

of killing itself," thereby striking this aggravating factor, this Court finds the facts of this case are analogous to the facts in *Jones v. Gibson*, 206 F.3d 946 (10th Cir. 2000). Specifically, in *Jones* the victim was shot without provocation. After initially shooting the victim, the Petitioner mocked and taunted the victim. In finding the evidence sufficient to support the jury's finding of the "heinous, atrocious or cruel" aggravating factor, the Tenth Circuit said

> This is not a case where the victim was rendered unconscious prior to any physical injury or mental torture. The manner of killing involved cruelty beyond the act of the killing itself due to the threats and taunts . . . . we do not need to 'engage in pure speculation and guesswork' to conclude [the victim] experienced conscious mental torture before death.
>
> Considering the unprovoked killing of [the victim], the likelihood that he suffered both mental torture before the first shot and between the two shots, petitioner's attitude as evidenced by his taunts and verbal threats, and the pitiless nature of the shootings, we conclude there was sufficient evidence to support the heinous, atrocious, or cruel aggravator.

*Id*., at p. 954.

Accordingly, after viewing the evidence in the light most favorable to the prosecution, this Court finds the decision of the Oklahoma court is not an unreasonable determination of the facts based upon the evidence presented at trial. In addition to the factual findings of the Oklahoma court quoted above, several witnesses testified the victim did not say anything threatening or aggressive to the Petitioner. J.T.Vol. III, at pp. 417-418 and 439. Rather, witnesses indicated as the Petitioner came towards the victim yelling obscenities and taunting him, the victim put his hands in front of himself in a defensive motion. *Id*. Also, the victim kept telling Petitioner to leave him alone as he tried to back away from the Petitioner. *Id*.

*See also,* State's Exhibit 2 in which a witness indicated victim begged Petitioner to leave him alone. Despite the victim's willingness to leave, Petitioner pursued him shoving a knife into the left ventricle of the victim's heart. J.T. Vol. VI, at p. 115. The victim made others aware that he had been stabbed before he fell to the ground, conscious but unable to speak. J.T. Vol. III, at p. 441 and J.T. Vol. IV, at pp. 18 and 20. After the victim was on the ground, bleeding to death, Petitioner continued his cruel verbal assaults toward the completely defenseless but conscious victim. *Id.*, at pp. 29-30 and 32. As in *Jones* the manner of the killing in this case involved cruelty beyond the act of the killing itself due to the threats and taunts which the victim heard and saw before he was stabbed in the chest as well as the continuing verbal abuse directed toward him while he lay bleeding to death on the ground unable to speak. Based on the evidence, this Court finds the evidence supported both a finding that great physical as well as extreme mental anguish would have been involved in this murder. As a result, this Court finds the evidence considered in the light most favorable to the state was sufficient to support the jury finding this aggravating factor beyond a reasonable doubt. Thus, the decision of the Oklahoma Court of Criminal Appeals was not contrary to, nor an unreasonable application of *Jackson*.

### C. Sufficiency of Evidence re: "Continuing threat" aggravator

Petitioner also alleges in his first proposition of error that the evidence was insufficient to support the "continuing threat" aggravating circumstance.[3] Petitioner argues

---

[3]Oklahoma's "continuing threat" aggravating factor authorizes the imposition of the death penalty if the sentencer finds there to be "the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." OKLA. STAT. tit. 2, .§ 701.12(7) (1981).

because "there was no evidence of prior criminal acts of violence or evidence of violent criminal activity after the crime,"[4] the state failed to establish a pattern of criminal activity which would likely continue into the future. The Oklahoma Court of Criminal Appeals rejected this argument during direct appeal finding:

> [Petitioner] further contends the evidence was insufficient to support the "continuing threat to society" aggravating circumstance. In order to support this aggravating circumstance, the State must demonstrate a defendant will continue to present a threat to society after sentencing. A defendant's criminal history, the callousness of the crime, threats against others, lack of remorse, and attempts to prevent calls to the police are all factors this Court has previously considered when addressing this issue.
>
> The State presented evidence of [Petitioner's] criminal history in the form of prior convictions for second degree burglary, possession of stolen vehicle and escape from a penal institution. If this evidence was all that was offered in support of the aggravator, it would be insufficient. Other evidence offered in support of this aggravator included testimony by [Petitioner's] family members that they were afraid of him and needed the sheriff to evict [Petitioner] from their house, and testimony that while in jail [Petitioner] filled a spray bottle with urine and sprayed it on guards who were serving his food. This evidence shows a pattern of escalating criminal activity and general disregard for the rules of society which supports the jury's finding of a probability of future dangerousness which constitutes a continuing threat to society.
>
> [Petitioner's] own words and actions show the callousness with which this murder was committed. [Petitioner] threatened to harm not only the teenagers outside the convenience store, but also the clerks inside the store. Further, the record is completely void of any sign of remorse by [Petitioner]. This evidence of [Petitioner's] attitude and actions showed he has a propensity to violence which makes him a continuing threat to society. Accordingly, this assignment of error is denied.

*Phillips*, 989 P.2d at 1039-1040 (citations omitted).

---

[4]Pet. at p. 39.

Again, the controlling standard is whether any reasonable trier of fact could have found the aggravator beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Under the AEDPA, the question this Court must decide is whether the Oklahoma court's decision was reasonable. *McCracken v. Gibson*, 268 F.3d 970, 981 (10th Cir. 2001). After reviewing the evidence in the light most favorable to the state, this Court finds any rational juror could have found this aggravating factor beyond a reasonable doubt. Although the victim was only stabbed one time, he was taunted both before and after being stabbed; he observed Petitioner chasing his friends; and he heard the ugly hate filled words of Petitioner as he struggled to survive. Additionally, as found by the state court, evidence was presented to the jury that Petitioner's own family members were afraid of him and that he had little regard for the jail rules, having engaged in activities within the jail setting which were potentially harmful to the jail guards. Therefore, the decision of the Oklahoma Court of Criminal Appeals was not contrary to, nor an unreasonable application of *Jackson*. Accordingly, Petitioner is not entitled to relief on this issue.

## 2. Jury instructions

Petitioner asserts in his second ground for relief that his Eighth and Fourteenth Amendment rights were violated when the trial court refused to instruct the jury on the lesser included offenses of second degree murder and/or first degree manslaughter. Additionally, in his fourth proposition of error, Petitioner claims the first stage instructions, as a whole, were so inaccurate, confusing, contradictory, and misleading that they deprived him of his constitutional right to a fair trial and due process of law. In his sixth ground for relief,

Petitioner alleges the trial court's failure to instruct the jury regarding his right not to testify violated his rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

Petitioner also complains in his first proposition that the trial court violated his Eighth Amendment rights when it omitted the word "physical" from the last sentence of the jury instruction on the "heinous, atrocious or cruel" aggravating circumstance. Further, in his eleventh proposition, Petitioner says he was deprived of his Eighth and Fourteenth Amendment rights when the jury was misinstructed as to the presumption of innocence in the penalty phase of trial. Finally, on April 15, 2004, Petitioner filed an Amendment to his Petition in which he alleges the trial court's failure to instruct the jury that aggravating factors outweighed mitigating factors beyond a reasonable doubt violated Petitioner's Sixth, Eighth, and Fourteenth Amendment rights.

As a general rule, improper jury instructions do not form the basis for federal habeas corpus relief. *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). In attempting to set aside a state conviction based on an erroneous jury instruction, a § 2254 petitioner has a heavy burden. Generally, such errors are not reviewable in federal habeas proceedings, "unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (citing *Long v. Smith*, 663, F.2d 18, 23 (6th Cir. 1981)).

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain

error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process", *Cupp v. Naughten*, 414 U.S., at 147, 94 S.Ct., at 400, 38 L.Ed.2d 368, not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,'" *Id*., at 146, 94 S.Ct., at 400.

*Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977)

(footnote omitted).

Issues regarding whether a jury was properly instructed are questions of law. *United States v. Voss*, 82 F.3d 1521 (10th Cir. 1996). Accordingly, this Court must decide whether the Oklahoma court's decision regarding jury instruction issues was "contrary to . . . clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

### a. First stage

<u>1. Lesser included instructions</u>

Failure of a state trial court to give instructions on lesser included offenses does not generally state a claim cognizable in federal habeas corpus. *Muller v. Israel*, 510 F.Supp. 730 (E.D. Wis. 1981) and cases cited therein. See also, *Poulson v. Turner*, 359 F.2d 588 (10th Cir. 1966), *cert. denied*, 385 U.S. 905, 87 S.Ct. 219, 17 L.Ed.2d 136 (1966). Where, however, a state's capital sentencing scheme has the potential for unreliable sentencing, the failure to allow the jury to consider a verdict of guilt of a lesser included noncapital offense which is warranted by the evidence can state a constitutional claim. *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). In *Hopper v. Evans*, 456 U.S. 605, 609, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), the Supreme Court reiterated that lesser included instructions were only required when supported by the evidence.

Petitioner sought instructions on two lesser included offenses, second degree murder[5] and first degree manslaughter. Petitioner first raised these issues in his direct appeal, arguing he was entitled to these instructions under *Beck*. In denying relief, the Oklahoma court found: 1) "the evidence showed [Petitioner] acted with the specific intent to effect the death of the victim," *Phillips*, 989 P.2d at 1035 and, 2) "the evidence in the present case did not

---

[5]In *Willingham v. State*, 947 P.2d 1074 (Okla. Crim. App. 1997), the Oklahoma Court of Criminal Appeals held second-degree depraved mind murder is not a lesser included offense of first-degree malice murder. *Shrum v. State*, 991 P.2d 1032, 1036 (Okla. Crim. App. 1999), overruled *Willingham*. In overruling *Willingham*, the Oklahoma court held the decision was prospective only and would be "applied only to those cases pending on appeal and in all future cases." *Shrum* was decided approximately twelve (12) days after the Oklahoma Court of Criminal Appeals entered its decision in this case. Because Oklahoma currently recognizes second degree murder as a lesser included offense, this Court will consider it as a lesser included offense for purposes of this opinion even though it was not so considered by the Oklahoma court at the time of Petitioner's trial or during his appeal.

support a second degree murder instruction." *Id.* Additionally, in deciding that an instruction on first degree manslaughter was not warranted by the evidence, the Oklahoma court specifically found Petitioner had not presented any evidence to establish "that [Petitioner] was intoxicated to the extent his mental powers were overcome, rendering it impossible for him to form the specific criminal intent to kill." *Id.*, at 1035 - 1036.

Under Oklahoma law, a homicide is murder in the second degree "[w]hen perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any design to effect the death of any particular individual." OKLA. STAT. tit. 21, § 701.8(1) (1991). Whereas, first degree manslaughter in Oklahoma is defined as a homicide "perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide." OKLA. STAT. tit. 21, § 711 (1991). Both of these lesser included offenses require the defendant have no intent to kill. Therefore, this Court is required to examine the evidence presented at trial to determine whether it would have allowed a rational jury to find Petitioner perpetrated the homicide without an intent to kill. *Mitchell v. Gibson*, 262 F.3d 1036, 1051 (10th Cir. 2001).

Petitioner urges this Court to reject the Oklahoma court's findings because Petitioner claims the Oklahoma court improperly considered whether there was sufficient evidence to warrant a conviction for First Degree Murder as opposed to considering whether there was sufficient evidence to warrant instructing the jury on the offense of Second Degree Murder. To support this argument, Petitioner relies on *Hogan v. Gibson*, 197 F.3d 1297, 1305 (10th

Cir. 1999).  Unlike the facts in *Hogan*, however, in addition to finding there was sufficient evidence to warrant a conviction for First Degree Murder, the Oklahoma court specifically found Petitioner had not presented sufficient evidence to warrant the second degree depraved mind murder instruction.  *Phillips*, 989 P.2d at 1035.  Further, the Oklahoma court found the evidence established "that [Petitioner] fully intended the consequences of his acts."  *Id.*, at 1029.  Thus, this Court finds that the state court conducted the appropriate inquiry under *Beck*, 447 U.S. at 637, 100 S.Ct. 2389.  Therefore, based upon the specific evidence in this case, including evidence Petitioner approached the unarmed victim and then stabbed the victim directly in the heart, this Court finds Petitioner has failed to establish that the decision of the Oklahoma Court of Criminal Appeals is such an unreasonable determination of the facts that the instructions were contrary to clearly established Supreme Court precedent.

Furthermore, Oklahoma law requires a court to instruct on the defense of voluntary intoxication only when sufficient evidence is presented to meet the legal criteria for said defense.  *Jackson v. State*, 964 P.2d 875, 892 (Okla. Crim. App. 1998).  Thus, before a defendant is entitled to an instruction on the defense of voluntary intoxication, Oklahoma law requires that the "defendant first, be intoxicated and, second, be so utterly intoxicated, that his mental powers are overcome, rendering it impossible for [him] to form the specific criminal intent or special mental element of the crime.  O.U.J.I. Cr.2d, 8-36 & 8-39 (1996)."  *Phillips*, 989 P.2d at 1035 (quoting *Jackson v. State*, 964 P.2d 875, 892 (Okla. Crim. App. 1998)).  In determining that an instruction on first degree manslaughter was not warranted by the evidence, the Oklahoma Court of Criminal Appeals  specifically found Petitioner had

not presented any evidence to establish "that [Petitioner] was intoxicated to the extent his mental powers were overcome, rendering it impossible for him to form the specific criminal intent to kill." *Id.*, at 1035 - 1036.

Petitioner now argues because there was conflicting testimony that Petitioner smelled like beer, it seemed like he had been drinking to one nineteen year old lay witness and he seemed angry,[6] he should have received an instruction on first degree manslaughter. Petitioner fails, however, to acknowledge the findings of the Oklahoma Court of Criminal Appeals regarding the evidence in this case. Specifically, the Oklahoma court found:

> Of the nine (9) eyewitnesses who testified, only two made any reference to the possibility that [Petitioner] might be intoxicated. Brian Ezell testified on cross-examination that he smelled beer on [Petitioner's] breath and that it seemed to him as if [Petitioner] had been drinking. On re-direct examination, Ezell was asked if [Petitioner] appeared to be intoxicated, to which he responded, "I just smelled alcohol on his breath." On re-cross examination, Ezell agreed with counsel's statement "that basically a man with liquor on his breath, picked a fight with ya'll for no reason?" Thomas O'Brian, the assistant manager at the Love's, testified on re-direct that [Petitioner] did not appear to be intoxicated. He said he did not smell any alcohol on [Petitioner], that [Petitioner] did not slur his speech, or have trouble walking. None of the other eyewitnesses smelled any alcohol on [Petitioner] or opined that he was intoxicated. Additionally, Vicki Holliday, the bartender at the bar [Petitioner] visited after the stabbing, testified that when [Petitioner] came into the bar between 11:00 p.m. and midnight, he seemed calm, that she did not smell any alcohol on him and that he did not seem intoxicated.
> None of the evidence showed that [Petitioner] was actually intoxicated, therefore he failed to support the first element of his defense. Further, no evidence was presented, either directly through defense witnesses or indirectly through the State's witnesses, that [Petitioner] was intoxicated to the extent his mental powers were overcome, rendering it impossible for him to form the specific criminal intent to kill. Accordingly, the trial court properly rejected

---

[6] J.T. Vol. III, at pp. 404-405 and 467- 468.

an instruction on voluntary intoxication and an accompanying instruction on first degree manslaughter.

*Id.*

Based upon an examination of the trial court transcripts, this Court finds Petitioner has failed to demonstrate that these factual determinations are not fairly supported by the evidence. Accordingly, this Court finds Petitioner has failed to establish that the Oklahoma Court of Criminal Appeals decision resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law, or that the decision was based on an unreasonable determination of the facts in light of the evidence. Therefore, Petitioner is not entitled to relief on this issue.

## 2. Lack of instruction re: Petitioner's right not to testify

In his sixth ground for relief, Petitioner asserts the failure of the trial court to give the requested "no-adverse-inference" instruction violated his Fifth, Sixth and Fourteenth Amendment rights. Petitioner first raised this issue during his direct appeal. The Oklahoma Court of Criminal Appeals recognized that failure to give the requested instruction was a constitutional error. Since, however, the Oklahoma court found there was "no reasonable possibility that the omission of the instruction might have contributed to the conviction," the court found the error harmless beyond a reasonable doubt. *Phillips*, 989 P.2d at 1037. Respondent argues Petitioner has failed to show that the decision of the Oklahoma court was either "contrary to" or "an unreasonable application of" established Supreme Court precedent and, therefore, Petitioner is not entitled to relief herein.

In *Carter v. Kentucky*, 450 U.S. 288, 300, 101 S.Ct. 1112, 1119, 67 L.Ed.2d 241 (1981), the Supreme Court held "the Fifth Amendment requires that [a] criminal trial judge must give a 'no-adverse-inference' jury instruction when requested by a defendant to do so." While the Supreme Court did not decide whether failure to give such an instruction should be subject to harmless error analysis, *id.*, 450 U.S. at 304, 101 S.Ct. at 1121, the Court has applied harmless error analysis to an improper jury charge which allowed an adverse inference to be drawn from a defendant's failure to testify. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1976).

The Oklahoma Court of Criminal Appeals, in deciding that the failure to give a "no-adverse-inference" jury instruction was harmless beyond a reasonable doubt, followed the framework laid out in *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed2d 302 (1991), in which the Supreme Court recognized a distinction between structural errors, which require reversal, *per se*, and trial errors, which require a reviewing court to engage in harmless error analysis. "Structural errors" affect "the framework within which the trial proceeds," *id.*, 499 U.S. at 310, 111 S.Ct. at 1265, unlike simple errors in the trial process itself. Without this framework, the criminal trial cannot "reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Id.* The Supreme Court has found structural errors in a "very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citing Supreme Court precedent which found structural errors for 1) a total deprivation of the right to counsel; 2) lack of an impartial trial judge; 3) unlawful exclusion

25

of grand jurors on the basis of race; 4) denial of right to self-representation at trial; 5) denial of the right to a public trial; and 6) an erroneous reasonable-doubt jury instruction.)

Whereas, a trial error occurs "during the presentation of the case to the jury," and is, therefore, "quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante*, 499 U.S. at 307-308, 111 S.Ct. at 1264. In applying harmless error analysis to trial errors, "the Court has been faithful to the belief that the harmless error doctrine is essential to preserve the 'principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.'" *Id.* (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)).

After deciding that "[t]he failure to give [Petitioner's] requested instruction is clearly an error in the trial process itself," the Oklahoma Court of Criminal Appeals conducted harmless error analysis finding:

> . . . the jury was instructed the defendant had pled not guilty and that no inference of guilt should arise merely because an Information was filed by the District Attorney, the defendant was presumed innocent, and that each element of the crime charged had to be proven beyond a reasonable doubt. No comments were made during presentation of the evidence or closing arguments regarding any inferences to be drawn from [Petitioner's] failure to testify. Further, the evidence against [Petitioner] was strong. Here, we find omission of the instruction harmless beyond a reasonable doubt as there is no reasonable possibility that the omission of the instruction might have contributed to the conviction.

*Phillips*, 939 P.2d at 1037.

Several circuit courts have concluded that failure to give a requested no adverse-inference jury instruction is subject to harmless error analysis. *Lewis v. Pinchak*, 348 F.3d 355 (3rd Cir. 2003), *cert. denied*, 540 U.S. 1200, 124 S.Ct. 1461, 158 L.Ed.2d 117 (2004); *Beathard v. Johnson*, 177 F.3d 340 (5th Cir. 1999), *cert. denied*, 528 U.S. 954, 120 S.Ct. 380, 145 L.Ed.2d 296 (1999); *United States v. Brand*, 80 F.3d 560 (1st Cir. 1996); *Hunter v. Clark*, 934 F.2d. 856 (7th Cir. 1991), *cert. denied*, 502 U.S. 945, 112 S.Ct. 388, 116 L.Ed.2d 338 (1991); *Finney v. Rothgerber*, 751 F.2d 858 (6th Cir. 1985), *cert. denied*, 471 U.S. 1020, 105 S.Ct. 2048, 85 L.Ed.2d 310 (1985). Therefore, this Court finds the Oklahoma Court of Criminal Appeals' decision is not contrary to, nor does it involve an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d)(1). Further, in applying the harmless error rule to the facts of this particular case, this Court finds the decision of the Oklahoma Court was not an unreasonable determination of the facts in light of the strong and unrefuted evidence presented in the state court trial. 28 U.S.C. § 2254(d)(2). Accordingly, Petitioner is not entitled to habeas relief on this issue.

### 3. First stage instructions as a whole

In addition to the specific objections to the jury instructions discussed above, Petitioner asserts in his fourth proposition that the first stage jury instructions as a whole were so inaccurate, confusing, contradictory and misleading that they deprived him of his constitutional right to a fair trial and due process of law. In particular, Petitioner claims the instructions given by the trial court misstated the law concerning the burden of proof and the presumption of innocence. Petitioner's complaints arise because the trial court did not use verbatim the Oklahoma Uniform Jury instructions. Additionally, Petitioner argues the instructions given failed to adequately state the law applicable to the juries duties and obligations in the deliberative process. Petitioner claims there were so many instructional errors in his case "that the jury was left without critical guidance in its deliberative process" which "may have prevented them from considering constitutionally relevant evidence." Pet. at p. 63. Petitioner first raised this issue on direct appeal where the Oklahoma Court of Criminal Appeals acknowledged that the trial court did not use the Uniform Jury Instructions for criminal cases but denied relief holding, in pertinent part:

> . . . Reading the instructions a whole, particularly Instructions No. 1 and 2, it is clear the presumption of innocence continues until each element of the offense of first degree murder is proven beyond a reasonable doubt. Accordingly, we have no "grave doubts" that any error in Instruction No. 1 had a "substantial influence" on the outcome of the trial. Therefore, any error is harmless and not grounds for reversal.
> * * * * *
> While the instructions given to the jury were not the uniform instructions, they certainly did not give the jury "free rein to consider anything it chose." These instructions adequately guided the jury's consideration of the evidence and informed the jury that its verdict must be based on the evidence and law

presented at trial. As such, any error in the trial court's failure to give the uniform instructions was harmless. Accordingly, this assignment of error is denied.

*Phillips*, 989 P.2d at 1038 (citations omitted).

Reading the first stage jury instructions in the context of the entire trial, this Court finds Petitioner has failed to establish that the instructions were constitutionally inadequate. In fact, other than the refusal of the trial court to instruct on lesser included offenses and on the defendant's right not to testify, the trial court gave, almost verbatim, the instructions requested by defense counsel. The main difference in the instructions given and those requested was simply the way the trial court combined the requested instructions.[7]

The following instructions were given during the first stage of trial:

## INSTRUCTIONS OF THE COURT

Ladies and Gentlemen of the Jury,

The defendant is charged with murder in the first degree of Jason McPhail on July 19, 1996 in Bryan County County (sic), Oklahoma.[8]

## INSTRUCTION NO. 1

To this charge the defendant has entered a plea of not guilty, which casts on the State the burden of proving the material allegations of the information to your satisfaction, beyond a reasonable doubt, before you would be justified in returning a verdict of guilty.

The information is simply the charge upon which the defendant is placed upon trial, and sets forth in a formal way the offense of which the

---

[7] It should be pointed out that the trial court only declined to give two other requested instructions. The instructions declined would have 1) advised the jury that an attorney has the right to interview witnesses, O.R. at p. 527, and 2) defined "evidence." O.R. at p. 537.

[8] The uniform instruction requested by Petitioner would only have added Petitioner's name after the word "defendant" and would have eliminated the victim's name. It also would have added the words "or about" after the word "on" and before the date of the crime. Finally, the first line of Instruction No. 1 which was given by the court would have been contained in this introductory comment to the jury. O.R. at p. 535.

defendant is accused, and it is, in and of itself, no evidence of the defendant's guilt, and you should not allow yourselves to be influenced against the defendant by reason of the filing of such Information.

The defendant is presumed innocent of the crime charged against him and innocent of each and every material element constituting such offense, and this presumption of innocence continues until such time as his guilt is shown to your satisfaction beyond a reasonable doubt, and if, upon a consideration of all the evidence, facts and circumstances in the case you entertain a reasonable doubt of the guilt of the defendant of the crime charged against him, you must give him the benefit of that doubt and return a verdict of not guilt (sic).[9]

## NO. 2

No person may be convicted of MURDER FIRST DEGREE unless the State proves beyond a reasonable doubt each element of the crime. These elements are: First, the death of a human; Second, the death was unlawful; Third, the death was caused by the Defendant; Fourth, the death was caused with malice aforethought.[10]

In this regard, you are also instructed that no person may be convicted of MURDER FIRST DEGREE unless his conduct caused the death of the person allegedly killed. A death is caused by conduct if the conduct is a substantial factor in bringing about the death and the conduct is dangerous and threatens or destroys life.[11]

"Malice aforethought" means a deliberate intention to take away the life of a human being. The term doesn't mean hatred, spite or ill-will. It means a deliberate intent to take a human life which intent was formed before the act and which exists at the time the homicidal act is committed. No particular length of time is required for the formation of this deliberate intention. The

---

[9] The language in the uniform instruction requested by Petitioner would simply have said:
> The Defendant is presumed innocent of the crime charged, and the presumption continues unless, after consideration of all the evidence, you are convinced of his guilt beyond a reasonable doubt. The State has the burden of presenting the evidence that establishes guilt beyond a reasonable doubt.
>
> The Defendant must be found not guilty unless the State produced evidence which convinces you beyond a reasonable doubt of each element of the crime.

O.R. at p. 536.

[10] This paragraph contains identical language to the uniform instruction requested by Petitioner. O.R. at p. 520.

[11] The language contained in this paragraph and the next paragraph is virtually identical to the uniform instruction requested by Petitioner. The only real difference is that the trial court combined the each of the paragraphs contained in this instruction from the individual uniform instructions requested by Petitioner. See, O.R. at pp. 519-522.

intent may have been formed instantly before the commission of the homicidal act. However, in determining whether the Defendant had the deliberate intention to take a human life at the time of the alleged homicide, you may consider all the external circumstances surrounding the event including the words, conduct, demeanor and motive of the Defendant.

INSTRUCTION NO. 3

HOMICIDE - CAUSATION

No person may be convicted of murder in the first degree degree (sic) unless his conduct caused the death of the person allegedly killed. A death is caused by the conduct if the conduct is a substantial factor in bringing about the death and the conduct is dangerous and threatens or destroys life.[12]

Instruction No. 4

There has been introduced the testimony of certain witnesses who purport to be skilled in their line of endeavor. Such witnesses are known in law as expert witnesses. An expert witness is one who is skilled in any certain art, business or profession, possessed of peculiar knowledge acquired by study, observation and practice.

You are instructed that you may consider the testimony of these witnesses, and give it such weight and value as you think it should have, but the weight and value to be given their testimony is for you to determine. You are not required to surrender your own judgment to that of any person testifying as an expert, for the testimony of an expert, like that of any other witness, is to be received by you and given such weight and value as you deem it is entitled to receive.[13]

---

[12]This language is identical to the instruction requested by Petitioner with the exception of the duplicate word "degree." Additionally, none of the words in the requested instruction were in bold typeface. *See*, O.R. at p. 519.

[13]While the court's instruction expounded upon the definition of an expert witness, this instruction is very similar to the uniform instruction requested by Petitioner. *See*, O.R. at p. 534.

# Instruction No. 5

You should consider only the evidence introduced while the Court is in session. You are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified when considered with the aid of the knowledge which you each possess in common with other persons. You may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which you find to have been established by the testimony and evidence in the case.[14]

"Direct Evidence" is the testimony of a person who asserts actual, personal knowledge of a fact, such as the testimony of an eyewitness. "Direct Evidence" may also be an exhibit such as a photograph which demonstrates the existence of a fact.[15]

"Circumstantial Evidence" is the proof of facts or circumstances which gives rise to a reasonable inference of other connected facts that tend to show the guilt or innocence of a defendant. It is proof of a chain of facts and circumstances that indicates either guilt or innocence.[16]

The law make no distinction between the weight to be given to either direct or circumstantial evidence. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.[17]

The State relies in part for a conviction upon circumstantial evidence. In order to warrant a conviction of a crime upon circumstantial evidence, each fact necessary to prove the guilt of the defendant must be established by the evidence beyond a reasonable doubt. All the facts necessary to such proof must be consistent with each other and with the conclusion of guilt the State seeks to establish. All of the facts and circumstances, taken together, must be inconsistent with any reasonable theory or conclusion of a defendant's innocence. All of the facts and circumstances, taken together, must establish to your satisfaction the guilt of the defendant beyond a reasonable doubt.[18]

---

[14]The language in this paragraph is identical to an instruction requested by Petitioner. *See*, O.R. at p. 525.

[15]The language in this paragraph is also identical to language in Petitioner's requested instruction. *See*, O.R. at p. 526. Petitioner's requested instruction would have, however, contained one more sentence which read as follows: "It is proof which points immediately to a question at issue and which proves the existence of a fact without inference or presumption." *Id.*

[16]Again, the language in this paragraph is identical to the language in one of Petitioner's requested instructions. *See*, O.R. at p. 528.

[17]The language in this paragraph mirrors language in one of Petitioner's requested instructions. *See*, O.R. at p. 529.

[18]The language in this paragraph also coincides with the language in one of Petitioner's requested instructions. *See*, O.R. at p. 531.

## Instruction No. 6

If you find beyond a reasonable doubt that the defendant committed the crime of Murder in the First Degree, you shall return a verdict of guilty by marking the Verdict Form appropriately. If you have a reasonable doubt of the defendant's guilt to the charge of Murder in the First Degree, or if you find that the State has failed to prove each element of Murder in the First Degree beyond a reasonable doubt, you shall return a verdict of not guilty by marking the Verdict Form appropriately. The issue of punishment is not before you at this time.[19]

## Instruction No. 7

The Court has made rulings in the conduct of the trial and the admission of evidence. In so doing the Court has not expressed nor intimated in any way the weight or credit to be given any evidence or testimony admitted during the trial, nor indicated in any way the conclusions to be reached by you in the case.

You are the judges of the facts, the weight of the evidence and the credibility of the witnesses. In determining such weight or credit you may consider: The interest, if any, which the witness may have in the result of the trial; the relation of the witness to the parties; the bias or prejudice, if any has been apparent; the candor, fairness, intelligence and demanor (sic) of the witness; the ability of the witness to remember and relate past occurrences, means of observation, and opportunity of knowing the matters about which the witness has testified. From all the facts and circumstances appearing in evidence and coming to your observation during the trial, aided by the knowledge which you each possess in common with the other persons, you will reach your conclusions. You should not let sympathy, sentiment or prejudice enter into your deliberations, but should discharge your duties as jurors impartially, conscientiously and faithfully under your oaths and return such verdict as the evidence warrants when measured by the instructions.

These instructions contain all the law, whether statute or otherwise, to be applied by you in this case, and the rules by which you are to weigh the evidence and determine the facts in issue. You must consider the instructions as a whole and not a part to the exclusion of the rest.

You must not use any method of chance in arriving at a verdict but base it on the judgment of each juror concurring therein.

---

[19]This paragraph is identical to Petitioner's requested instruction. *See*, O.R. at p. 523.

After you have retired to consider your verdict, select one of your number as foreman and enter upon your deliberations. When you have agreed on a verdict, your foreman alone will sign it, and you will as a body return it in open court. Your verdict must be unanimous. Forms of verdict will be furnished you. You will now listen to the argument of counsel, which is a proper part of this trial.[20]

O.R. at pp. 596-605.

As can be seen from reading these instructions in their entirety, Instruction No. 1 clearly advised the jury that the State had the burden of proving the material allegations of the Information beyond a reasonable doubt and that the defendant was "presumed innocent of the crime charged against him and innocent of each and every material element constituting such offense," and that this presumption of innocence continued until such time as the defendant's guilt was established beyond a reasonable doubt. *Id.*, at p. 597. Furthermore, Instruction No. 2 reiterated that the defendant could not be convicted of Murder in the First Degree "unless the State proves beyond a reasonable doubt each element of the crime." *Id.*, at p. 598. This instruction continued by stating each of the elements of the crime of Murder in the First Degree. *Id.* Additionally, Instruction Numbers 5 and 6 advised the jury, in part, that "[a]ll of the facts and circumstances, taken together, must establish to your satisfaction the guilt of the defendant beyond a reasonable doubt" and "[i]f you have a reasonable doubt of the defendant's guilt to the charge of Murder in the First Degree, or if you find that the State has failed to prove each element of Murder in the First Degree beyond

---

[20]This instruction contains language from several of the instructions requested by Petitioner. Apparently, in an attempt to make the instruction understandable, the trial judge simply combined several instructions. *See*, O.R. at pp. 532, 533, 539, 540, 541 and 542.

a reasonable doubt, you shall return a verdict of not guilty . . ." *Id.*, at pp. 602-603. The instructions defined the crime of Murder First Degree, including the concept of "malice aforethought" and "causation.." *Id.*, at pp. 598-599. Finally, the instructions advised the jury about expert witness testimony, direct and circumstantial evidence, and their role as the judges of the facts. *Id.*, at pp. 600-605. As indicated previously, other than the refusal of the trial court to instruct on lesser included offenses and on the defendant's right not to testify, the trial court substantially gave the instructions requested by Petitioner and the instructions not given would not have significantly aided the jury in performing its duties. Accordingly, while the Oklahoma court found a technical error occurred by not utilizing the uniform jury instructions, this Court does not believe that the first stage jury instructions were so inadequate that the jury was given unfettered discretion to disregard constitutionally relevant evidence as alleged by Petitioner. Further, to the extent the jury instructions fairly and accurately stated the applicable law as opposed to misstating the applicable law, this Court finds the Oklahoma court's decision regarding first stage jury instruction issues was not "contrary to . . . clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Therefore, Petitioner is not entitled to relief on this issue.

### b. Second stage

1. Presumption of innocence/burden of proof

The Petitioner asserts, in his eleventh proposition of error, that the jury was also misinstructed as to the presumption of innocence in the second stage of trial. In considering this issue on direct appeal, the Oklahoma Court of Criminal Appeals held "the second stage instructions, when read in their entirety accurately state the appropriate burden of proof" and that the instructions given "adequately informed the jury of the presumption of innocence and the State's burden of proof." *Phillips*, 989 P.2d at 1041-1042. As a result, the Oklahoma court found "the trial court's failure to give the appropriate uniform instruction was harmless error as it did not have a substantial influence on the outcome of the trial." *Id*.

The Petitioner argues because the Oklahoma court did not consider any Supreme Court precedent in its decision making process, this Court must review this error *de novo*. However, as stated previously, the Supreme Court has made it clear that a state court is not required to cite Supreme Court case law, or even be aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]." *Early*, 537 U.S. at 8, 123 S.Ct. at 365.

Reading the second stage instructions in conjunction with the first stage instructions, it appears the jury was accurately informed of the appropriate burden of proof. The following additional instructions were given to the jury during the second stage of trial:

## FURTHER INSTRUCTIONS OF THE COURT

LADIES AND GENTLEMEN OF THE JURY,

You have already found the Defendant Guilty of the crime of MURDER FIRST DEGREE. It is now your duty to determine and assess punishment in this case.

## NO. 1

Every person who is guilty of the crime of MURDER FIRST DEGREE is punishable by death, or by life imprisonment without parole, or by life imprisonment.

## NO. 2

In the sentencing stage of this trial, the State has filed a document called a Bill of Particulars in which they allege that the Defendant should receive the punishment of Death, because of the following aggravating circumstance(s):

A.      That the Defendant knowingly created a great risk
        of death to more than one person.
B.      That the murder was especially heinous, atrocious
        or cruel.
C.      That there is the existence of a probability that the
        Defendant would commit criminal acts of
        violence that would constitute a continuing threat
        to society.

## NO. 3

The Defendant has entered a plea of Not Guilty to the allegations in this Bill of particulars, which casts on the State the burden of proving these allegations beyond a reasonable doubt.

The Bill of Particulars is simply the formal method by which the State gives notice as to why it is seeking the Death Penalty. It is not evidence that there was an aggravating circumstance, and you should not be prejudiced simply because it was filed.

The Defendant is presumed to be innocent of the allegations made against him in the Bill of Particulars, and innocent of each and every material element of this charge, and this presumption continues until the State proves his Guilt beyond a reasonable doubt. And if, after considering all the facts and

circumstances in the case, you have a reasonable doubt that these aggravating circumstances exist, then you must give the Defendant the benefit of that doubt and find him Not Guilty of the Bill of Particulars.

## INSTRUCTION NUMBER 4

You are instructed that, in arriving at your determination of punishment, you must first determine any one or more of the following aggravating circumstances existed beyond a reasonable doubt:

1. The defendant knowing created a great risk of death to more than one person;

2. The murder was especially heinous, atrocious, or cruel;

3. That there is the existence of a probability that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society.

## INSTRUCTION NUMBER 5

## HEINOUS, ATROCIOUS, CRUEL DEFINED

As used in these instructions, the term "heinous" means extremely wicked or shockingly evil; "atrocious" means outrageously wicked and vile; "cruel" means pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others.

The phrase "especially heinous, atrocious, or cruel" is directed to those crimes where the death of the victim was preceded by torture of the victim or serious abuse.

## INSTRUCTION NUMBER 6

## CONTINUING THREAT TO SOCIETY DEFINED

The State has alleged that there exists a probability that the defendant will commit future acts of violence that constitute a continuing threat to society. This aggravating circumstance is not established unless the State proved beyond a reasonable doubt:

First,     that the defendant's behavior has demonstrated a threat to society; and

|  | |
|---|---|
| <u>Second,</u> | a probability that this threat will continue to exist in the future. |

## INSTRUCTION NUMBER 7

## JURY'S DETERMINATION OF AGGRAVATING CIRCUMSTANCES

Aggravating circumstances are those which increase the guilt or enormity of the offense. In determining which sentence you may impose in this case, you may consider only those aggravating circumstances set forth in these instructions.

Should you unanimously find that one or more aggravating circumstances existed beyond a reasonable doubt, you are authorized to consider imposing a sentence of death.

If you do not unanimously find beyond a reasonable doubt that one or more of the aggravating circumstances existed, you are prohibited from considering the penalty of death. In that event, the sentence must be imprisonment for life without parole or imprisonment for life.

## INSTRUCTION NUMBER 8

## CIRCUMSTANTIAL EVIDENCE
## EXCLUDING REASONABLE THEORIES OTHER THAN
## EXISTENCE OF AGGRAVATING CIRCUMSTANCE

The State relies in part upon circumstantial evidence for proof of the aggravating circumstances. In order to warrant a finding of any aggravating circumstance or circumstances upon circumstantial evidence, each fact necessary to prove the existence of the circumstance must be established by the evidence beyond a reasonable doubt. All the facts necessary to such proof must be consistent with each other and with the conclusion the State seeks to establish. All of the facts and circumstances, taken together, must establish to your satisfaction the existence of the aggravating circumstance beyond a reasonable doubt.

## INSTRUCTION NUMBER 9

## DIRECT EVIDENCE DEFINED

"Direct evidence" is the testimony of a person who asserts actual, personal knowledge of a fact, such as the testimony of an eyewitness. "Direct evidence" may also be an exhibit such as a photograph which demonstrates the existence of a fact. It is proof which points immediately to a question at issue and which proves the existence of a fact without inference or presumption.

## INSTRUCTION NUMBER 10

## CIRCUMSTANTIAL EVIDENCE DEFINED

"Circumstantial evidence" is the proof of facts or circumstances which give rise to a reasonable inference of other connected facts that tend to show the guilt or innocence of a defendant. It is proof of a chain of facts and circumstances that indicates either guilt or innocence.

## INSTRUCTION NUMBER 11

## DIRECT AND CIRCUMSTANTIAL EVIDENCE - WEIGHT

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. Circumstantial evidence would be considered by you together with all the other evidence in the case in arriving at your verdict.

## INSTRUCTION NUMBER 12

## VICTIM IMPACT EVIDENCE - - CAPITAL CASES

The prosecution has introduced what is known as victim impact evidence. This evidence has been introduced to show the financial, emotional, psychological, or physical effects of the victim's death on the members of the victim's immediate family. It is intended to remind you as the sentencer that just as the defendant should be considered as an individual, so too the victim is an individual whose death may represent a unique loss to society and the family. This evidence is simply another method of informing you about the specific harm caused by the crime in question. You may consider this evidence in determining an appropriate punishment. However, your

consideration must be limited to a moral inquiry into the culpability of the defendant, not an emotional response to the evidence.

As it relates to the death penalty: Victim impact evidence is not the same as an aggravating circumstance. Proof of an adverse impact on the victim's family is not proof of an aggravating circumstance. Introduction of this victim impact evidence in no way relieves the State of its burden to prove beyond a reasonable doubt at least one aggravating circumstance which has been alleged. You may consider this victim impact evidence in determining the appropriateness of the death penalty only if you first find that the existence of one or more aggravating circumstance has been proven beyond a reasonable doubt by evidence independent from the victim impact evidence, and find that the aggravating circumstances found outweigh the finding of one or more mitigating circumstances.

As it relates to the other sentencing options: You may consider this victim impact evidence in determining the appropriate punishment as warranted under the law and facts in the case.[21]

## INSTRUCTION NUMBER 13

### JURY'S DETERMINATION OF MITIGATING CIRCUMSTANCES

Mitigating circumstances are those which, in fairness, sympathy, and mercy, may extenuate or reduce the degree of moral culpability or blame. The determination of what circumstances are mitigating is for you to resolve under the facts and circumstances of this case.

While all twelve jurors must unanimously agree that the State has established beyond a reasonable doubt the existence of at least one aggravating circumstance prior to consideration of the death penalty, unanimous agreement of jurors concerning mitigating circumstances is not required. In addition, mitigating circumstances do not have to be proved beyond a reasonable doubt in order for you to consider them.

---

[21]As numbered in the original trial court record, this paragraph appears on a separate page following Instruction No. 13. This Court, however, has placed this paragraph with Instruction No. 12 as it appears to simply be the second page to said instruction. *See*, O.R. at pp. 618-620.

Instruction No. 14

## CIRCUMSTANCES WHICH MAY BE MITIGATING

Evidence has been introduced as to the following mitigating circumstances:

The Defendant did not have any significant history of violent prior criminal activity.

The defendant acted out of anger toward his father and because of an abusive childhood.

The defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired.

The Defendant was under the influence of alcohol.

The Defendant was under the influence of mental/emotional disturbance.

The Defendant's age.

The Defendant's emotional/family history.

In addition, you may decide that other mitigating circumstnaces (sic) exist, and if so, you should consider those circumstances as well.

## INSTRUCTION NUMBER 15

## WEIGHING AGGRAVATING AND MITIGATING CIRCUMSTANCES

If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, the death penalty shall not be imposed unless you also unanimously find that any such aggravating circumstance or circumstances outweigh the finding of one or more mitigating circumstances. Even if you find that the aggravating circumstances outweighs the mitigating circumstances, you may impose a sentence of imprisonment of life or imprisonment for life without parole.

## INSTRUCTION NUMBER 16
## AGGRAVATING CIRCUMSTANCES REDUCED TO WRITING

If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, the law requires that you reduce such findings to writing by stating specifically what aggravating circumstances existed, if any. This finding must be made a part of your verdict.

You must indicate this finding by checking the box next to such aggravating circumstances on the appropriate verdict form furnished you, and such verdict form must be signed by your foreperson.

The law does not require you to reduce to writing the mitigating circumstances you find, if any.


## INSTRUCTION NUMBER 17

## CLOSING CHARGE

In arriving at your determination as to what sentence is appropriate under the law, you are authorized to consider only the evidence received here in open court presented by the State and the defendant during the sentencing phase of this proceeding.

All the previous instructions given you in the first part of this trial apply where appropriate, except that in this part of the trial, you may consider sympathy or sentiment for the defendant in deciding whether to impose the death penalty.

You must consider all the previous instructions that apply together with these additional instructions and not just part of them. Together they contain all the law and rules you must follow in deciding this case.

You determine the facts. The importance and worth of the evidence is for you to decide.

I have made rulings during the second part of this trial. In ruling, I have not in any way suggested to you, nor intimated in any way, what you should decide. I do not express any opinion whether or not the aggravating circumstances or mitigating circumstances did or did not exist, nor do I suggest to you in any way the punishment to be imposed by you.

You must not use any kind of chance in reaching a verdict, but you must rest it on the belief of each of you who agrees with it.

You have already elected a foreperson. In the event you assess the death penalty, your verdict must be unanimous. You may also return a unanimous verdict of imprisonment for life without parole or imprisonment for life. Proper forms of verdict will be given you which you shall use in expressing your decision. When you have reached your verdict, all of you in a body must return it into open court.

The law provides that you shall now listen to and consider the further arguments of the attorneys.

O.R. at pp. 606-625.

A review of the instructions given during the second stage of trial in conjunction with the first stage instructions, reveal the jury was accurately informed of the appropriate burden of proof. As can be seen, the instructions given during the second stage were labeled as "Further Instructions of the Court." *Id.*, at p. 606. Instruction No. 1 advised the jury of the available punishment options. *Id.*, at p. 607. Instruction No. 2 listed the three aggravating factors alleged in the State's Bill of Particulars. *Id.*, at p. 608. Instruction No. 3 advised the jury that the State had the burden of proving the Bill of Particulars beyond a reasonable doubt and the defendant was presumed innocent of the allegations contained in the Bill of Particulars and innocent of every material element. *Id.*, at p. 609. Instruction No. 4 provided further guidance to the jury regarding the aggravating circumstances they were to consider. *Id.*, at p. 610. Instruction No. 5 defined the heinous, atrocious or cruel aggravating factor[22] and Instruction No. 6 defined the continuing threat to society aggravating factor. *Id.*, at pp. 611-612. Instruction No. 7 advised the jury how to consider the aggravating factors. *Id.*, at p. 613. Instruction No. 8 again advised the jury that they had to find the existence of any aggravating circumstance beyond a reasonable doubt. *Id.*, at p. 614. Further, Instruction No. 12 reiterated to the jury that the burden was on the State to prove the aggravating factors beyond a reasonable doubt. *Id.*, at p. 618. Instruction No. 13 also advised the jury that aggravating factors had to be proven beyond a reasonable doubt and that the jury must find them unanimously. At the same time, this instruction advised the jury that mitigating factors

---

[22]Since this instruction omitted the word "physical" from the phrase "torture or serious physical abuse," it is discussed in more detail in subsection 2(b)(3).

did not have to be proven beyond a reasonable doubt in order for the jury to consider them. *Id.*, at p. 619. Finally, Instruction No. 17 referred the jury back to the first stage jury instructions which had advised the jury the defendant was presumed innocent.[23] *Id.*, at p. 624. When read in their entirety and in conjunction with the first stage jury instructions, this Court finds the instructions as a whole did not deprive the Petitioner of either a fair trial or due process of law as the jury was clearly advised that the defendant was presumed innocent and that the State was required to prove the aggravating factors beyond a reasonable doubt. Therefore, this Court finds Petitioner has failed to establish that the decision of the Oklahoma Court of Criminal Appeals was contrary to, or involved an unreasonable application of Supreme Court precedent. Accordingly, Petitioner is not entitled to relief on this issue.

2.  Burden of proof re: weighing of aggravating and mitigating circumstances

In his Amended Petition, Petitioner argues his capital sentence was unconstitutionally obtained in light of the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), because the trial court did not instruct the jury that aggravating factors had to outweigh mitigating factors beyond a reasonable doubt. Respondent argues this claim is barred by the one-year limitations period contained within the AEDPA. In his reply, Petitioner counters that this Court should consider this claim as if fully raised and alleged within his Petition filed herein on October 1, 2001, because this Court granted his request to amend his petition on March 4, 2004 to include this claim. While Petitioner is correct that this Court authorized the filing of a supplement to the

---

[23]*See*, Instruction No. 1, O.R. at p. 597.

Petition, at the same time this Court allowed Respondent to raise any available defenses to all issues contained within the supplement.  *See*, Dkt. 40.  Thus, this Court must initially decide whether this claim is barred by the AEDPA.

Title 28 U.S.C. § 2244(d)(1) contains a one (1) year period of limitations which runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id*.

Since Petitioner has not alleged that the State of Oklahoma imposed an unconstitutional impediment to the filing of this claim or that the factual predicate of this claim was otherwise undiscoverable prior to the filing of his original habeas petition, subsections (B) and (D) of section 2244 do not apply in ascertaining the applicable limitations period.  Further, since the Supreme Court has specifically held "*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review," *Schriro v. Summerlin*, 542 U.S. 348, 358, 124 S.Ct. 2519, 2526, 159 L.Ed.2d 442 (2004), subsection (C) of section 2244 does not apply to this claim.  Thus, Petitioner's claim

should have been filed, pursuant to 28 U.S.C. § 2244(d)(1)(C), on or before October 3, 2001.[24]

Title 28 U.S.C. § 2242 allows the amendment of a petition for writ of habeas corpus subject to the rules of procedure applicable in civil cases. Rule 15(a)(2) of the Federal Rules of Civil Procedure allows a party to amend his pleadings with leave of court and indicates courts "should freely give leave where justice so requires." Subsection (c)(1) of Rule 15, however, governs a motion to amend where, as in this case, the statute of limitations has already run, providing in pertinent part:

> An amendment of a pleading relates back to the date of the original pleading when:
>
>       \* \* \* \* \* \*
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; . . . .[25]

This rule has been applied to § 2254 petitions for habeas corpus. *Fama v. Commissioner of Correctional Services,* 235 F.3d 804, 816 (2nd Cir. 2000). *See also*, *Rodriguez v. United States*, 286 F.3d 972, 981 (7th Cir. 2002) and cases cited therein (holding an untimely § 2255 claim will not relate back unless the claim has "more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings" and stressing that courts "have been uniform in their denial of amendments that would add a new claim or theory of relief.")

---

[24]Petition for certiorari denied on October 2, 2000 in *Phillips v. Oklahoma*, 531 U.S. 837, 121 S.Ct. 97, 148 L.Ed.2d 56 (2000).

[25]FED. R. CIV. P. 15(c) provides two other instances in which an amendment may relate back to the original filing date, neither of which are relevant here.

Because Petitioner moved to amend his petition long after the one-year statute of limitations had run, this Court must determine if his amended petition relates back in accordance with FED. R. CIV. P. 15(c). In proposition XI of his original petition, Petitioner argued that the jury instructions violated Petitioner's "statutory right regarding the burden of proof requisite to a death sentence under *Sullivan v. Louisiana*, 508 U.S. 275 (1993)." Pet. at p. 94. Petitioner's amendment simply attempts to expand upon this argument to include a requirement that the jury must be instructed that aggravating circumstances must outweigh mitigating evidence beyond a reasonable doubt. In an attempt to simplify this case, this Court will assume *arguendo* that, pursuant to FED. R. CIV. P. 15(c), this argument does relate back to the original burden of proof jury instruction argument, and find the amendment is permissible.

Considering the argument on the merits, however, this Court finds Petitioner is not entitled to relief. Petitioner first raised this claim in a second post-conviction proceeding before the Oklahoma Court of Criminal Appeals. In rejecting Petitioner's claim, the Oklahoma court relied upon its decision in *Torres v. State*, 58 P.3d 214 (Okla. Crim. App. 2002) which held "Oklahoma's provision that jurors make the factual finding of an aggravating circumstance beyond a reasonable doubt is all that *Ring* requires." *Id.*, at 216.

The Supreme Court, in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), held that capital defendants were entitled to jury determination, beyond a reasonable doubt, of any fact that could increase their maximum punishment from life to death. In Petitioner's case, the jury ultimately decided, beyond a reasonable doubt, that the

murder was especially heinous, atrocious or cruel and that there was the existence of a probability that Petitioner would constitute a continuing threat to society. *Ring* did not change relevant Supreme Court case law to also require an instruction to the jury that the aggravating circumstances must outweigh the mitigating evidence beyond a reasonable doubt. Furthermore, in *Kansas v. Marsh*, 548 U.S. 163, 126 S.Ct. 2516, 165 L.Ed.2d 429 (2006), the Supreme Court indicated as long as the State is required to prove aggravating circumstances beyond a reasonable doubt before a defendant is considered death-eligible, the "State enjoys a range of discretion in imposing the death penalty, including the manner in which aggravating and mitigating circumstances are to be weighed." *Id.*, 126 S.Ct. at 2525. Accordingly, Petitioner has failed to establish that the Oklahoma Court's adjudication of this claim was contrary to or an unreasonable application of relevant Supreme Court precedent. Petitioner is therefore, not entitled to habeas relief on this issue.

## 3. Improper Jury Instruction regarding "heinous, atrocious, or cruel" aggravator

Petitioner also complains that the trial court's misdefinition of the "heinous, atrocious, or cruel" aggravating circumstance failed to adequately channel the jury's discretion as required by the Eighth Amendment to the United States Constitution. Specifically, the trial court omitted the word "physical" from the phrase "torture of the victim or serious physical abuse." Since Petitioner did not make a specific objection to this instruction at trial, the Oklahoma Court of Criminal Appeals reviewed only for plain error. Because the error "did not lesson the standard of proof and thus could have had no impact on the sentencing decision," the Oklahoma Court of Criminal Appeals found this error to be harmless. *Phillips*, 989 P.2d at 1040-104l.

The Tenth Circuit Court of Appeals has consistently held that omission of the word "physical" is an error of state law which is harmless. Thus, the Tenth Circuit has refused to grant habeas relief in cases where this error has occurred. *Turrentine v. Mullin*, 390 F.3d 1181, 1195-1196 (10th Cir. 2004), *cert. denied*, 545 U.S. 1106, 125 S.Ct. 2544, 162 L.Ed.2d 278 (2005) (holding the ailing instruction did not have a "substantial and injurious effect or influence in determining the jury's verdict" nor did the instruction so infect "the entire trial that the resulting conviction violates due process") and *Miller v. Mullin*, 354 F.3d 1288 (10th Cir. 2004), *cert. denied*, 543 U.S. 1154, 125 S.Ct. 1294, 161 L.Ed.2d 119 (2005). Therefore, Petitioner is not entitled to relief on this issue.

### 3. Competency to Stand Trial

Petitioner's third proposition of error alleges the procedure employed by the trial court in determining he was competent to stand trial was improper and that he was incompetent to stand trial in April, 1997. Thus, Petitioner claims he was deprived of his right to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Respondent counters by arguing the procedure employed by the trial court to determine Petitioner's competency was proper and that Petitioner has failed to show that he was unable to aid in his defense. Thus, Respondent urges this Court to find Petitioner has failed to show that the Oklahoma court's decision was contrary to, or an unreasonable application of Supreme Court law.

There can be no question that the "criminal trial of an incompetent defendant violates due process." *Medina v. California*, 505 U.S. 437, 453, 112 S.Ct. 2572, 2581, 120 L.Ed.2d 353 (1992); *Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966); and *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). The test for determining competency to stand trial is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). This inquiry involves an assessment of whether the defendant can recite the charges against him and provide accounts of the facts. *United States v. Hamsi*, 901 F.2d 293, 295 (2nd Cir. 1990) (citing *United States v. Mercado*, 469 F.2d 1148, 1152 (2d Cir. 1972)). An inquiry into a

defendant's competence cannot, however, end simply because a defendant can recite the charges or the names of witnesses, "for proper assistance in the defense requires an understanding that is 'rational as well as factual.'" *Id.* (quoting *Dusky*, 362 U.S. at 402, 80 S.Ct. at 788).

Both substantive and procedural due process competency claims can arise in any given case. A procedural competency claim arises where a trial court fails to hold an adequate competency hearing. A substantive competency claim is based on an allegation that the defendant was tried and convicted while, in fact, incompetent. *McGregor v. Gibson*, 248 F.3d 946, 952 (10th Cir. 2001).

> The standards of proof for substantial and procedural competency claims differ. To make out a procedural competency claim, a defendant "must raise a bona fide doubt regarding his competency to stand trial . . ." This requires a demonstration that "a reasonable judge should have doubted" the defendant's competency. It does not require proof of actual incompetency. A substantive competency claim, on the other hand, requires the higher standard of proof of incompetency by a preponderance of the evidence.

*Allen v. Mullin*, 368 F.3d 1220, 1239 (10th Cir. 2004) (citations omitted).

## A. Procedural competency

In this case, even though the trial court clearly held a competency hearing,[26] Petitioner alleges the procedure employed by the trial court in determining he was incompetent was improper because the trial court ordered Petitioner be given psychotropic drugs three weeks before trial began and two weeks later found Petitioner was competent to stand trial despite the fact he had never been given any of the prescribed drugs. A review of the record below,

---

[26]*See*, Tr. of April 22, 1997.

however, indicates that the trial judge entered the order regarding medication based upon an agreement by the State and Petitioner's counsel as opposed to the judge actually making a finding that the medication was necessary. *See*, Tr. of April 22, 1997, at p. 58. After hearing the testimony in support of Petitioner's competency motion, the court specifically made his finding regarding Petitioner's competency based upon the evidence presented. The question this Court must decide is whether, based on the record below, a reasonable judge should have doubted Petitioner's competency. "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant" to the bona fide doubt inquiry. *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

In this particular case, Petitioner filed his first Application for Determination of Competency on September 5, 1996. This application alleged that the following facts were sufficient to raise a doubt as to the competency of the Petitioner:

> a) Defendant is unable to comprehend his attorney or to meaningfully assist in the defense of his case; and
>
> b) Defendant's mental state and communication abilities are such that they seriously interfere with the understanding of the proceedings against him and with his capability of aiding his attorney in preparation for trial.

O.R. at p. 21.

On September 6, 1996, the trial court ordered Petitioner committed to Eastern State Hospital in Vinita, Oklahoma for a determination of Petitioner's competency to proceed. *Id.*, at p. 26. Thereafter, on November 6, 1996, the records reflect a post competency hearing

was held at which time the trial court accepted the report from Eastern State Hospital and found Petitioner competent to stand trial. *Id.*, at p. 33.

On April 21, 1997, Petitioner filed a second Application for Determination of Competency. On April 22, 1997, the same judge who had previously found Petitioner competent to stand trial conducted a second competency hearing. At this hearing, Petitioner presented two affidavits, one from Dr. Phillip Murphy (a licensed clinical psychologist) and one from Dr. J.R. Smith (a board-certified licensed psychiatrist). The state stipulated if these doctors were present, they would testify consistent with what was contained within their respective affidavits.

While Dr. Murphy's affidavit indicated he conducted an interview with and an evaluation of Petitioner on March 17, 1997, nothing within the affidavit indicates how much time Dr. Murphy spent interviewing Petitioner nor what tests he conducted during his evaluation of Petitioner. After consulting with the defense team and reviewing the affidavit of Dr. Smith, Dr. Murphy states "Due to the marked deterioration in the defendant's behavior and mental status, it is my opinion that this defendant is incompetent to stand trial at this time." *Id.*, at p. 464.

Dr. Smith's affidavit also indicates he conducted an interview with and an evaluation of Petitioner on March 10, 1997. Again, the affidavit does not reveal how much time Dr. Smith spent interviewing Petitioner or what tests he conducted during his evaluation of Petitioner. A review of Dr. Smith's affidavit implies the doctor's opinion was significantly influenced by his discussions with defense counsel regarding Petitioner's behavior following

court proceedings held on April 8, 1997 and April 17, 1997. Dr. Smith admits that Petitioner has never before been diagnosed or treated for mental illness. Nonetheless, Dr. Smith opines Petitioner is not competent to stand trial. *Id*., at pp. 466-467.

Additionally, the following evidence, as summarized by the Oklahoma Court of Criminal Appeals was introduced at the second competency hearing:

[Petitioner] also presented the testimony of Karen Billing, [sic] an investigator with the Oklahoma Indigent Defense System (OIDS) and Michael Johns, a registered nurse and volunteer investigator at OIDS. Ms. Billing [sic] testified that in her capacity as an investigator she had visited with [Petitioner] several times. She stated that during the first few visits "he seemed okay" and that his defense team believed he was competent to stand trial. However, as his case moved along through the court system and as he was pressed by his defense team for further information concerning the crime, communication with him became difficult and he became increasingly agitated. Ms. Billing [sic] stated that at a hearing held approximately one week earlier, [Petitioner] "seemed to do okay during the hearing". However, during a recess in which defense counsel questioned [Petitioner] about certain details of the offense, he became extremely agitated and was unable to concentrate and focus on the matter at hand. In her opinion, [Petitioner] was "very psychotic" at the time. She testified that defense counsel had discussed a defense of second degree murder, but they felt that [Petitioner's] inability to accurately recall facts of the murder prevented such a defense. She said [Petitioner] understood the charges against him, but that he was hostile and belligerent towards defense counsel. She stated that sometime in March it was agreed that medication could help [Petitioner], but that she had been unsuccessful in her attempts to contact prison officials to make arrangements for [Petitioner] to receive anti-psychotic medication. On cross-examination, she admitted she was not a medical expert and could only give her personal opinion as to [Petitioner's] psychotic condition. She said he was aware of what occurred the day of the homicide, but he was "not always aware of the whole context" and it was difficult to receive accurate information from him concerning events surrounding the murder.

Michael Johns testified he had a degree in nursing and had worked for ten (10) years in the field of psychiatry and mental health. He stated he had interviewed [Petitioner] and reviewed reports from Drs. Murphy and Smith and concluded that [Petitioner] had a serious thought process disorder and

mental illness. He said that in an interview with [Petitioner] where specific questions about the crime were asked, it was "hard to determine whether he refused to or couldn't" provide certain details because it was obvious he was thinking about something unrelated to the case. He opined [Petitioner] exhibited symptoms of someone who is psychotic. Mr. Johns stated there was a Department of Corrections order specifically directing anti-psychotic medication for [Petitioner], but that [Petitioner] had not received such medication.

In addition to the above witnesses, defense counsel offered a statement as an officer of the court to the effect that [Petitioner] had been belligerent and hostile towards counsel and refused to discuss his case. Counsel stated that as trial approached, [Petitioner] became more belligerent and less cooperative.

The State presented the testimony of one witness, Fred Cook, Unit Manager, Oklahoma State Penitentiary. Mr. Cook testified to having daily contact with [Petitioner] for approximately two (2) to three (3) months and described him as a typical inmate. He said [Petitioner] had told him about his case and seemed to understand the charges against him. He noted that [Petitioner] had commented that "they" were going to offer him life without parole but that he was not going to take it. Mr. Cook said that under DOC's contract with Bryan County, [Petitioner] was to be held segregated from the general prison population. The only place available to hold him was a cell generally used for those inmates in protective custody.

During Cook's testimony, [Petitioner] interrupted shouting obscenities and arguing it wasn't right for him to be placed in "PC". After [Petitioner] was forcibly removed from the courtroom, Cook explained that inmates in protective custody were perceived as "snitches" by the general prison population. However, he had explained many times to [Petitioner] that he was not in protective custody, he was merely being held in a cell used for protective custody inmates. Cook called [Petitioner's] outburst typical of his behavior to "showboat", to get mad and act up when he did not get what he wanted. However, Cook said that was what the majority of the prison population did. Cook described [Petitioner] as "conveniently crazy". He explained that when it was convenient for [Petitioner] to act "crazy" he could, but then the rest of the time, he would carry on conversations and function just like everyone else. Cook said that compared to other inmates he had seen in his twenty-three (23) years of working in the prison system, [Petitioner] did not suffer from mental illness. On cross-examination, he testified he was not aware of any order for medication for [Petitioner].

*Phillips*, 989 P.2d at 1026-1027.

Further, defense counsel advised the court that he had spoken to the doctor at Eastern State Hospital who had previously found Petitioner competent about Petitioner's recent behavior and while that doctor felt medication might help treat Petitioner's mental illness he still did not feel Petitioner was incompetent. Tr. of April 22, 1997, at p. 36. After hearing all of this evidence, the trial court made the following rulings:

> I have heard the evidence and taking the evidence -- I have not heard anything that convinces me that Mr. Phillips is -- cannot effectively and rationally assist his Counsel. On cross examination of Mr. Cook it was interesting that Mr. Phillips was able to surmise that being on PC is not a good thing while being in person. (sic) Sounds like he is thinking pretty soundly. I know I am speaking to the Court of Criminal Appeals right now but I do not feel he is incompetent to stand trial. That he knows right from wrong. I am not convinced that he is incompetent or unable to effectively and rationally assist his Counsel. If he wants to -- to react in Court as he did today, then he will be shackled and taped or removed from this Court. I think he is capable of communicating that to him. Motions to determine competency will be overruled and application is overruled and the motion for continuance will be overruled, exception allowed the defendant.

*Id*., at p. 55.

Defense counsel then asked the trial court to order a jury trial on the issue of competency, pursuant to 22 O.S. §§ 1175 *et.seq.* In denying counsel's request the Court further stated:

> The -- for the record the Court concurred in the agreement previously made by the State and defense counsel regarding medication and made no finding it was necessary. And after the hearing today and hearing testimony and reading the reports circulated I have -- this Court has absolutely no doubt that this person is competent to stand trial. That he definitely knows what he is doing and is able to assist his counsel and in a rational and effective manner. Exception allowed the defendant.

*Id*., at p. 58.

In upholding the trial court's competency ruling, the Oklahoma Court of Criminal

Appeals began by summarizing the law in Oklahoma regarding a defendant's competency

to stand trial. In particular, the court stated:

> An accused is presumed to be competent to stand trial and has the burden of proving his incompetence. If the defendant makes a threshold showing that he is incompetent by the filing of a proper application, the court must hold a hearing to examine the application. The test to be used at that hearing is whether the accused has a sufficient ability to consult with his lawyer and has a rational as well as actual understanding of the proceedings against him. The determination of whether a sufficient doubt has been raised regarding a defendant's competency is left to the trial judge. Such determination is based upon the particular facts and circumstances of each case. The trial court is not required to give controlling effect to the opinions of experts, but may rely on the opinion of lay witnesses and the court's own observations of the defendant.

*Phillips*, 989 P.2d at 1025 (quoting *Gilbert v. State*, 951 P.2d 98, 103-104 (Okla. Crim. App.

1997), *cert. denied*, 525 U.S. 890, 119 S.Ct. 207, 142 L.Ed.2d 170 (1998)) (citations

omitted).

Further, the court explained the term "doubt" as follows:

> It is well-settled in Oklahoma that the doubt referred to in the statute is that doubt which must arise in the mind of the trial court. The trial court may look to the source of the information and motive in determining whether there is doubt which would justify a sanity hearing, and the existence of a doubt as to defendant's sanity must arise from facts of a substantial nature. There must exist reasons to believe that the defendant's claim of insanity is genuine and not simulated to delay justice, and the finding of the trial court will not be disturbed on appeal unless a clear abuse of discretion is shown.

*Id.*, at p. 1026.

After considering the testimony summarized above, the Oklahoma appellate court

held:

The evidence shows [Petitioner] understood the nature of the charges against him and was able to assist counsel-- if he so chose. The evidence indicates [Petitioner] deliberately chose to become hostile and uncooperative with counsel. This is insufficient to raise a doubt as to his competency to stand trial.

[Petitioner's] claims of incompetency are "general, speculative assertions which do not raise a doubt as to [Petitioner's] ability to consult with counsel or understand the nature of the proceedings against him." The record clearly supports the trial court's finding, therefore such finding will not now be disturbed.

*Id*., at pp. 1027-1028 (citations omitted).

It is clear from a review of the competency hearing that Petitioner understood what was going on in the competency hearing. While Petitioner's outburst was inappropriate for a court setting, his verbal response established that he could follow the proceedings and that he understood what was being said and by whom. Based upon the totality of evidence considered by the trial court, this Court finds Petitioner has failed to establish that a reasonable judge would have had a bona fide doubt regarding Petitioner's competency. Furthermore, Petitioner has failed to establish that the Oklahoma court's decision was contrary to, or involved an unreasonable application of Supreme court precedent or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d). Accordingly, Petitioner's procedural competency claim is denied.

## B.  Substantive competency

Next, Petitioner requests this Court to hold, despite the state court's ruling, that he was incompetent to stand trial. The Petitioner does not submit any new evidence to establish his

incompetency.  Rather, he simply asks this Court to disregard the factual findings made by the trial court and find, based on the evidence introduced at the competency hearing held on April 22, 1997, that Petitioner was incompetent at the time of trial.  After carefully reviewing the evidence below, this Court finds Petitioner has failed to show that the state court's factual determination regarding competency was unreasonable in light of the entire record below. This Court may not substitute its judgment for that of the state court.  Rather, this Court must "presume the correctness of state court's factual findings unless applicants rebut this with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 127 S.Ct. at 1940.  "[T]o succeed in stating a substantive incompetency claim, a petitioner must present evidence that creates a "'real, substantial and legitimate doubt' as to his competency to stand trial." *James v. Singletary*, 957 F.2d 1562 (11th Cir. 1992).  Since the evidence in this case does not satisfy the "bona fide doubt" standard for a procedural competency claim, it cannot satisfy the more demanding standard for a substantive competency claim.  Furthermore, while defense counsel argued at the competency hearing that they did not believe that Petitioner was capable of assisting them not only as to testifying but also in selecting a jury, Petitioner sat through his entire trial without causing any disturbances and counsel never advised the court during the trial that they were having difficulty controlling and/or communicating with their client.  Accordingly, this Court rejects Petitioner's claim that he was tried while incompetent.

### 4.  Denial of right to present evidence

Petitioner's fourth proposition alleges he was deprived of an opportunity to present a defense and call witnesses during the first stage of his trial in violation of the Sixth and

Fourteenth Amendments of the United States Constitution. Petitioner's complaints arise because the trial court sustained the government's motion in limine thereby preventing Petitioner from putting on evidence about his abusive relationship to his father, his demeanor in the days prior to the stabbing and his attitude toward blacks during the first stage of trial to prove his lack of intent to kill the victim. In considering this issue on direct appeal, the Oklahoma Court of Criminal Appeals found "the evidence of the abuse suffered by [Petitioner] at the hands of his father occurred approximately twenty (20) years before this homicide. It was not part of an 'an (sic) unbroken chain of events leading up to and climaxing' with the stabbing of the victim . . ." and there was no connection between the weapon used and the abuse suffered by the petitioner. *Phillips*, 989 P.2d at 1030. Thus, the court found "[e]vidence of [Petitioner's] abusive past was not relevant to his state of mind toward the seventeen year old victim as it did not have any tendency to make more or less probable the fact that [Petitioner] intended to kill the victim." *Id.* Recognizing that a criminal defendant has a constitutional right to be heard at his trial,[27] the appellate court also considered whether the trial court's ruling denied Petitioner the opportunity to present his defense finding:

> . . . . [Petitioner] was not prevented from testifying, he was only prevented from presenting evidence that was not relevant to an issue to be decided in the guilt phase of trial. [Petitioner] still could have testified and described the events surrounding the stabbing. He was only prevented from detailing his abusive childhood. It was [Petitioner] and not the trial court who deprived the jury of first hand testimony of the crime from the defense point of view. Exclusion of [Petitioner's] abusive childhood did not prevent [Petitioner] from

---

[27] *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S.Ct. 2704, 2708, 97 L.Ed.2d 37 (1987).

presenting a defense. [Petitioner] made a strategic choice not to put on evidence in his defense. Therefore, we find [Petitioner] was not denied his constitutional right to present a defense.

*Id.*, at 1031.

While "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense," *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986), federal courts have long recognized that states have broad latitude under the Constitution to establish rules excluding evidence from criminal trials and "[s]uch rules will not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 1264, 140 L.Ed.2d 413 (1998) (quoting *Rock v. Arkansas*, 410 U.S. 44, 58, 107 S.Ct. 2704, 2712-2713, 97 L.Ed.2d 37 (1987)). As a general rule, federal habeas relief is not warranted based upon state evidentiary rulings unless the ruling is so egregious that it results in a denial of fundamental fairness thereby violating due process. *See*, *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004) (upholding right of state to exclude evidence defendant was engaged in a feud with his wife's family where court found the feud was not relevant to the shooting of the victims).

According to the record below, the trial court considered this issue several different times. The Oklahoma Court of Criminal Appeals summarized the testimony which was not allowed as follows:

In a pre-trial motion hearing, the defense argued that [Petitioner's] father had physically and mentally abused him since his childhood, that [Petitioner] had been living in Louisiana when he learned that his ex-wife and daughter were

living with his father, that he feared his father would abuse his daughter just as he had [Petitioner], and that [Petitioner] went to Durant to confront his father. The defense also argued that during the two or three days [Petitioner] was in Durant, he was extremely upset, he drank quite a bit and threatened suicide. The defense argued that the rage [Petitioner] felt for his father, combined with his drinking and mental illness, caused him to pick a fight with the victim, though he did not intend to kill the victim.

*Phillips*, 989 P.2d at 1029.

In reviewing the lengthy offer of proof made by trial counsel during the defense's case-in-chief,[28] this Court finds Petitioner has failed to establish that the Oklahoma court's decision was an unreasonable determination of the facts in light of the evidence. Further, based upon the entire record below, this Court finds Petitioner has failed to establish that he was deprived of a fundamentally fair trial by the trial court excluding testimony during the guilt stage of trial of abuse by the Petitioner's father which occurred years prior to the stabbing of an unrelated victim who was years younger than the Petitioner's father, or testimony of drinking in the days preceding the murder. None of the witnesses whose testimony was proffered could have shed any light on whether Petitioner was actually intoxicated at the time of the murder nor did they have any knowledge of what Petitioner's intent was at the time of the attack. Rather, the evidence was simply not relevant to the issues which the jury was tasked with deciding in the first stage of Petitioner's trial. Thus, this Court finds Petitioner has failed to establish that the Oklahoma court decision was contrary to, or involved an unreasonable application of Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas relief on this issue.

---

[28] *See*, J.T. Tr. Vol. V, at pp. 208-221.

### 5.  Prosecutorial misconduct

In his eighth proposition of error, Petitioner alleges he was deprived of his due process rights when the state trial court allowed the prosecutor to define "reasonable doubt" during the voir dire process.  Because Petitioner cited no federal authority nor made no reference to a federal constitutional claim, Respondent argues this issue was decided solely on the basis of state law and the claim as currently presented is, therefore, unexhausted.

A review of Petitioner's direct appeal brief reveals Petitioner argued "the trial court erred in allowing the prosecutor to impermissibly define and diminish the 'reasonable doubt' standard in voir dire." *See* Proposition VII in Petitioner's Direct Appeal Brief, at pp. 54-55. To support this claim, Petitioner cited three Oklahoma cases which had basically held the term "reasonable doubt" was self-explanatory and attempts to define it were error as a matter of state law.  Petitioner did not raise any federal constitutional challenges to any of the prosecutor's statements during voir dire.  Since Petitioner did not raise any constitutional challenges in state court, this Court finds Petitioner has failed to exhaust this issue.  *See*, *Hawkins v. Mullin*, 291 F.3d 658, 663-664 (10th Cir. 2002) (only where "essential substance" of claim is presented so that state courts have initial opportunity to address the issue will exhaustion have occurred).

Furthermore, not every improper remark by a prosecutor will amount to a deprivation of federal constitutional rights.  In a federal habeas proceeding, review of state prosecutor's allegedly prejudicial remarks is limited to remarks which cause a defendant's constitutional rights to be violated.  *Coleman v. Brown*, 802 F.2d 1227, 1237 (10th Cir. 1986).  Only if a

prosecutor's comments render the trial so fundamentally unfair as to amount to a denial of due process, would habeas relief be warranted. *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). *See also*, *Hoxsie v. Kerby*, 10 F.3d 1239, 1243 (10th Cir. 1997). The complained of remarks must be considered in the context in which they were made. *Greer v. Miller*, 483 U.S. 756, 765-66, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618 (1997) (citing *Darden v. Wainwright*, 477 U.S. 168, 179, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) and *Donnelly* (determining whether "remarks, in the context of the entire trial, were sufficiently prejudicial to violate respondent's due process rights")).

During voir dire the following colloquy occurred between the prosecutor and Juror Lorance relating to the burden of proof:

Q:    You understand that in a criminal trial, that the burden of proof is beyond a reasonable doubt?

A:    Yes, sir.

Q:    And the Court will - - you are the trier of the facts, and the Court will give you the instructions as to the law. Will you be able to follow those instructions?

A:    I would think.

Q:    Now in that regard, you won't hold us to any higher burden of proof? You would be able to forget anything that you might have heard like beyond all doubt, or beyond a shadow of a doubt?

* * * * *

Q:    In regard to burden of proof, will you be able to forget any phrase you might have heard, such as beyond all doubt, or beyond any doubt or beyond a shadow of a doubt, or anything else other than beyond a reasonable doubt?

A:    I really don't understand what you're asking me to agree to.

Q: In other words, you're not going to go back to the jury room and have a different type of burden of proof than the Court instructs you; are you?

A: No.

Q: If the court instructs you that the burden of proof is on the State of Oklahoma to prove to you beyond a reasonable doubt, you won't make it into a different burden than that; will you?

A: No.

Q: You wouldn't make it a higher burden of proof would you?

A: No.

J.T.Tr. Vol. I, at pp. 77 - 79. Subsequent prospective jurors were reminded that the State of Oklahoma was required to prove guilt beyond a reasonable doubt and were asked, in effect, whether they would hold the State to a higher burden of proof. *See*, *id*., at pp. 91, 99 - 100, 105-106, 109-110, 114-115, 117-118, 121, 177, and J.T.Tr. Vol. II, at pp. 207, 223-224, and 302-303. Nothing in the record establishes that the questions in voir dire were so fundamentally unfair in the context of the entire trial that Petitioner was denied his due process rights. As recognized by the Oklahoma Court of Criminal Appeals, "the comment in the present case was not an impermissible attempt to define reasonable doubt but an attempt to dispel commonly held attitudes and often heard phrases." *Phillips*, 989 P.2d at 1028.

Further, unlike the situation in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), the jury instructions correctly conveyed the concept of reasonable doubt. As a result, even if this claim had been exhausted, this Court finds Petitioner has failed to establish that he is entitled to relief herein. Accordingly, relief is hereby denied.

## 6.  Suppression issues

Petitioner argues in his ninth proposition of error that his due process rights were violated when the state court denied his motion to suppress his post-arrest statements, as well as the knife seized at the time of his arrest.  While habeas jurisdiction generally allows this Court to address constitutional violations, where a state has provided a full and fair opportunity to litigate Fourth Amendment claims, this Court cannot grant habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced in the state trial.  *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).  The Tenth Circuit has consistently held that a federal habeas court need not address Fourth Amendment issues as long as the state courts have given the petitioner a full and fair opportunity for a hearing on the issue.  *Brown v. Sirmons*, 515 F.3d 1072 (10th Cir. 2008); *Cannon v. Gibson*, 259 F.3d 1253, 1260-1261 (10th Cir. 2001); *Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999); *Miranda v. Cooper*, 967 F.2d 392, 400-401 (10th Cir. 1992); and *Gamble v. State*, 583 F.2d 1161, 1165 (10th Cir. 1978).  In *Sanders v. Oliver*, 611 F.2d 804, 808 (10th Cir. 1979), the Tenth Circuit held that "'Opportunity' includes procedural opportunity to raise a claim, and it includes a full and fair hearing."  The first question this Court must decide, therefore, is whether Petitioner was provided with an opportunity for full and fair litigation of his Fourth Amendment claims.  *Gamble v. State*, 583 F.2d at 1164.

Petitioner first raised this issue on direct appeal arguing his arrest was nothing more than a subterfuge for the purpose of gathering evidence about the homicide and that state

misconduct deprived him of the opportunity to litigate the issue before trial. The Oklahoma Court of Criminal Appeals reviewed this claim for plain error holding "failure to timely object to the legality of an arrest prior to entering a plea to the charges waives appellate review of the issue." *Phillips*, 989 P.2d at 1031.

While acknowledging the Oklahoma Court of Criminal Appeals addressed this issue, Petitioner contends use of plain error analysis by the Oklahoma court was inappropriate because the inaccurate probable cause affidavit misled counsel into believing there was no basis or reason to challenge the arrest. Even assuming counsel was initially mislead, nothing prevented counsel from raising the issue at trial immediately following the affiant's testimony. Further, while the Oklahoma court reviewed the claim for plain error, it also reviewed the claim on its merits finding there was "no evidence the bench warrant for driving under suspension was issued as a pretext for further investigation of the murder" and that "the warrant was not issued as a pretext for a search of the premises as officers entered only at [Petitioner's] request." *Id*., at 1031-1032. Therefore, based on the state court record, this Court concludes Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in the state courts. Accordingly, pursuant to *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), this Court is precluded from considering Petitioner's Fourth Amendment issues. For these reasons, Petitioner is not entitled to habeas corpus relief on this issue.

## 7. Challenge to Admission of Evidence

In his tenth proposition of error, Petitioner argues he was deprived of his constitutional right to a fair trial and due process by the admission of a photograph of the victim's foot wearing a toe tag and by admission of Petitioner's statement made at the time of his arrest. These issues were raised by Petitioner on direct appeal and addressed on the merits. Respondent argues the admission of this evidence was proper and, therefore, the proceedings were not fundamentally unfair. Thus, habeas relief on this issue would be inappropriate.

Trial counsel objected to the admission of these items arguing the photograph was irrelevant and that his statement was inadmissible hearsay. These claims are nothing more than claims of error under state law. As such, they are not cognizable herein. Federal courts simply do not have the authority to decide questions concerning the admissibility of evidence under state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Due process challenges to state evidentiary rulings are reviewed only for fundamental unfairness. *Matthews v. Price*, 83 F.3d 328, 331 (10th Cir. 1996). *See Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999)*; Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998) ("[D]ue process arguments relating to the admissibility of the victims' ... autopsy photos ... will not support habeas relief 'absent fundamental unfairness so as to constitute a denial of due process of law.' " (quoting *Martin v. Kaiser*, 907 F.2d 931, 934 (10th Cir.1990)), *cert. denied*, 119 S.Ct. 378 (1998)); *Hatch v. Oklahoma*, 58 F.3d 1447, 1468 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996)

("[I]n federal habeas proceedings, we do not question a state court's evidentiary rulings unless the petitioner can show that, as a whole, the court's rulings rendered his trial fundamentally unfair.").

The trial court's admission of both the photograph and Petitioner's statement was upheld by the Oklahoma Court of Criminal Appeals as matters properly within the discretion of the trial court. *Phillips*, 989 P.2d at 1032-1033. Although Petitioner argues these items were irrelevant or, in the alternative, that the prejudicial value outweighed the relevancy, the Oklahoma court found the photograph of the victim's toe was relevant to establish corpus delicti of the crime and that the probative value of the photograph was not outweighed by any prejudicial impact. *Id.*, at 1032. The state court similarly found Petitioner's

> statement was relevant and as consistent with other statements made by [Petitioner] denying his presence at the Love's store and any involvement in the crime. The relevance of this evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise.

*Id.*, at 1033. In light of the evidence at trial, this Court finds Petitioner has failed to establish that the admission of either the photograph of the victim's toe or the Petitioner's statement rendered his trial fundamentally unfair. Accordingly, Petitioner is not entitled to relief on this issue.

## 8. Victim Impact Evidence

Petitioner asserts in his twelfth proposition that his due process and Eighth Amendment rights were violated when the state court permitted the introduction of improper victim impact statements. Petitioner raised this issue during his direct appeal and the Oklahoma Court of Criminal Appeals adjudicated the issue on the merits. In denying relief, the Oklahoma court made the following findings of fact:

> . . . . . , the State filed a Notice of Victim Impact Statement indicating its intent to call as a witness, Margie Osuji, the victim's mother. Prior to her testimony, [Petitioner] objected on the grounds the evidence was unconstitutional and that the statement itself was improper as it was based entirely on the emotional impact of the witness's loss. [Petitioner] also specifically objected to statements concerning the witness's dreams of seeing her son get his diploma and go to college. [Petitioner] argued such statements were not relevant victim impact evidence. The court overruled the objections and allowed Mrs. Osuji to testify. She was the last witness called for the State in the penalty phase of trial and read a prepared statement for the jury which comprised two and quarter (sic) pages of the transcript.

> Mrs. Osuji stated, in part, the victim was her only child and that she missed him very much. She said her son was a well-behaved, level headed young man who was very responsible and well liked by everyone who knew him. She testified how she would go to her son's room each day and lie on his bed and cry, and that some days she would cry throughout the day or in the "wee hours" of the morning longing to see her son. She stated that she dreaded the nights, and could not sleep well at night when she was home alone. She said she could not go to a convenience store at night without thinking of what had happened to her son. She also stated that [Petitioner] robbed her of seeing her son walk across the stage and get his high school diploma, of seeing her son go to his senior prom and to college and of being a grandmother. After this testimony, [Petitioner] noted for the record the witness was visibly crying throughout the reading of the statement. The State admitted the witness was emotional but stated there were no emotional outbursts, that the witness "took good control of herself" and did not have to stop her testimony due to her emotions. Without comment, the trial court noted the State could call its next witness.

*Phillips*, 989 P.2d at 1042.

After considering these facts, the Oklahoma court determined the evidence was not so unduly prejudicial that it rendered the trial fundamentally unfair under the principles enunciated in *Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720, 735 (1991). In holding that the victim impact evidence was constitutionally acceptable, the Oklahoma court found:

> The victim impact evidence in this case comes very close to weighting the scales too far on the side of the prosecution by so intensely focusing on the emotional impact of the victim's loss. However, as we stated in *Cargle*,
>
>> In discussing this, we in no way hold the emotional impact of a victim's loss is irrelevant or inadmissible; we simply state that, in admitting evidence of emotional impact, especially to the exclusion of the other factors, a trial court runs a much greater risk of having its decision questioned on appeal. . . . . The more a jury is exposed to the emotional aspects of a victim's death, the less likely their verdict will be a "reasoned moral response" to the question whether a defendant deserves to die; and the greater the risk a defendant will be deprived of Due Process.
>
>> Mrs. Osuji's statements concerning crying for her son, her inability to sleep and go to convenience stores were probative of the emotional, psychological, and physical effects she experienced as a result of the murder of her only child. The descriptions of her son's personality provided a brief glimpse of the unique characteristics of the individual known as Jason McFail. While her statements concerning her desires for her son's future were speculative and may not have been relevant victim impact evidence, their admission did not prevent the jury from fulfilling its function in the second stage of trial. While a portion of the victim impact testimony was very emotional, taken as a whole, the testimony was within the bounds of admissible evidence, and its focus on emotion did not have such a prejudicial effect or so skew the presentation as to divert the jury from its duty to reach a reasoned moral decision on whether to impose the death penalty. Accordingly, this assignment of error is denied.

*Phillips*, 989 P.2d at 1043 (citations omitted).

The issue of victim impact evidence has been squarely addressed by the Supreme Court on several occasions. First, in *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), the Court in a 5-to-4 decision held that the Eighth Amendment prohibits a jury from considering a victim impact statement at the sentencing phase of a capital trial. The Court made clear that the admissibility of victim impact evidence was not to be determined on a case-by-case basis, but that such evidence was per se inadmissible in the sentencing phase of a capital case except to the extent that it "relate[d] directly to the circumstances of the crime." Thereafter, in *South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), the Court extended *Booth* to include prosecutorial statements to the sentencing jury regarding the personal qualities of the victim.

Later, in *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991), the Court overruled *Booth* and *Gathers* holding:

> if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.

*See also*, *Jones v. United States*, 527 U.S. 373, 395, 119 S.Ct. 2090, 2105, 144 L.Ed.2d 370 (1999)( Eighth Amendment allows a capital sentencing jury to consider evidence of victim's personal characteristics and the emotional impact of the murder on the victim's family.) If, however, the evidence introduced is "so unduly prejudicial that it renders the trial

fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Payne*, 501 U.S. at 825, 111 S.Ct. at 2608 (citing *Darden v. Wainwright*, 477 U.S. 168, 179-183, 106 S.Ct. 2464, 2470-2473, 91 L.Ed.2d 144 (1986)). As stated in *Darden*, the question a reviewing court must consider is whether the evidence introduced "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden,* U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

After reviewing the challenged evidence, this Court does not believe that the challenged testimony was "so unduly prejudicial" that Petitioner's trial was rendered "fundamentally unfair." Accordingly, this Court finds Petitioner has failed to establish that the decision of the Oklahoma Court of Criminal Appeals resulted in a decision contrary to, or an unreasonable application of, clearly established Federal law as determined by the United States Supreme Court. Therefore, pursuant to 28 U.S.C. § 2254(d), Petitioner is not entitled to relief on this issue.

## 9.  Ineffective Assistance of Counsel

Petitioner asserts in his thirteenth proposition that he was deprived of his rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution due to ineffective assistance of counsel. In particular, Petitioner claims, despite his contention in Proposition 9 that his arrest on a municipal bench warrant was an illegal pretext and subterfuge, that counsel was ineffective for failing to seek suppression of the evidence

gathered during his illegal arrest.  Additionally, Petitioner complains counsel was ineffective for failing to adequately investigate and present evidence of Petitioner's lack of racial animosity, after having opened the door in the second stage of trial, to the admission of a photograph of Petitioner's "white pride" tatoo.

The Supreme Court enunciated the legal standards which apply to claims of ineffective assistance of counsel in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). First, the Court indicated that the defendant must establish that the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must establish that the deficient performance prejudiced the defense. *Id.,* 466 U.S. at 687, 104 S.Ct. at 2064. Failure to establish either prong of the *Strickland* standard will result in a denial of Petitioner's Sixth Amendment claims. *Id.,* 466 U.S. at 696, 104 S.Ct. at 2069-2070. While ensuring that criminal defendants receive a fair trial, considerable judicial restraint must be exercised. As the Supreme Court cautioned in *Strickland,*

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all to easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Id*., 466 U.S. at 689, 104 S.Ct. at 2065. In order to establish prejudice in the guilt stage, the defendant has to show "there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.,* 466 U.S. at 694, 104 S.Ct. at 2068.

While at the penalty stage of a capital case, the defendant must show "there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* In other words, deficient performance is prejudicial only where it is clear that "but for trial counsel's errors, there is a reasonable probability that the ultimate result would have been different," *Washington v. Johnson*, 90 F.3d 945. 953 (5th Cir. 1996), *cert. denied,* 117 S.Ct. 1259, 137 L.Ed.2d 338 (1997); so that, the "confidence in the reliability of the verdict is undermined." *Id.*

The United States Supreme Court has indicated that every effort must be made by a reviewing court to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 1065. In addition, the Court indicated the conduct of counsel is "strongly presumed" to have been within the wide range of reasonable professional assistance. *Id.*

In this case, Petitioner raised this issue during his direct appeal and the Oklahoma Court of Criminal Appeals, relying upon the principles enunciated in *Strickland* disposed of these claims by finding Petitioner had failed to establish prejudice as a result of counsel's actions. First, as to Petitioner's claim regarding failure to challenge the legality of his arrest and the evidence obtained as a result of the arrest, the Oklahoma court said:

> [Petitioner's] claim regarding counsel's failure to challenge the arrest can be
> disposed of based upon a lack of prejudice. While the failure to object may
> rise to the level of ineffective assistance of counsel, such a failure often will
> not be conclusive. Where objections that might have been raised would have
> been properly overruled and those that might have been sustained would have
> amounted to at most harmless error had the ruling been incorrect, [Petitioner]
> has failed to show that any errors by counsel were so great as to render the
> results of the trial unreliable. Here, the arrest and seizure of the knife were
> legal, therefore Petitioner was not prejudiced by counsel's failure to raise an
> objection.

*Phillips*, 989 P.2d at 1044. Second, as to the allegation that counsel failed to present

evidence that Petitioner was not a racist, the Oklahoma Court of Criminal Appeals found:

> . . . reviewing the record in its entirety, it is clear that counsel could have asked
> as many witnesses as he could produce whether they thought [Petitioner] was
> a racist and it would not have made any difference in light of the evidence of
> [Petitioner's] own actions and words at the time of the murder. That evidence,
> upon which the jury found [Petitioner] guilty, showed he killed an unarmed
> young black man while spewing racist obscenities, both before and after the
> stabbing. Presenting the opinion testimony of witnesses who, in the first place,
> did not agree with the jury's determination of guilt, would not have mitigated
> the evidence offered in support of the aggravating circumstances. Whether or
> not [Petitioner] was a racist, he was found guilty on the evidence presented by
> the State. It was reasonable trial strategy for counsel not to spend the time on
> a defense which would have had no impact.

*Id.*, at 1047.

Although it is clear the Oklahoma court disposed of both of Petitioner's ineffective

assistance of counsel claims by finding a lack of prejudice, the Oklahoma court did not stop

its inquiry solely on that finding. Rather, the court considered the overall effectiveness of

counsel holding:

> . . . counsel presented a viable defense and thus fulfilled the function of making the adversarial testing process work.  As our ultimate focus must be on the fundamental fairness of the trial, we find that [Petitioner] has failed to rebut the strong presumption that counsel's conduct was professionally reasonable and that he has failed to show that he was denied a fundamentally fair trial.  Accordingly, this assignment of error is denied.

*Id.* at 1049.

To the extent the Oklahoma court found Petitioner's arrest was legal, Petitioner has failed to establish that the Oklahoma Court of Criminal Appeals decision was contrary to the principles enunciated in *Strickland.*  Furthermore, based upon the proposed witness list filed by counsel,[29] it becomes clear that counsel investigated the issue of Petitioner's racial animosity but ultimately chose not to introduce such evidence.  As a result, this Court finds the Oklahoma court's decision was not an unreasonable application of the facts in light of the record below.  Having failed to establish ineffective assistance of counsel, Petitioner is not entitled to relief on this issue.

## 10.  Use of Stun Belt

In his fourteenth proposition, Petitioner argues his Fifth, Eighth and Fourteenth Amendment rights were violated when the trial court required him to wear a stun belt device during his trial.  Petitioner first raised this issue during his direct appeal.  In denying relief, the Oklahoma Court of Criminal Appeals found:

---

[29]*See*, O.R. at p. 478 wherein counsel lists Rhonda M. Spikes as a witness who was prepared to "testify regarding [Petitioner's] attitudes towards blacks."

. . . Shortly before the jury was empanelled, defense counsel made a record that the State was forcing [Petitioner] to wear a stunbelt while in the courtroom. Defense counsel admitted the belt was not readily noticeable by the jury, but voiced his objection to it being referred to in any manner or any way informing the jury about it. The trial court indicated that [Petitioner] should not show it to the jury, . . . . .

All parties agreed the stunbelt was not visible to the jury. There is no evidence the belt hampered [Petitioner's] use of his hands, arms and legs or that it impaired his mental abilities. Therefore, absent such evidence, we find any error did not deny [Petitioner] a fair trial or have a "substantial influence" on the outcome of the trial.

*Phillips*, 989 P.2d at 1034 (citation omitted). Respondent asserts Petitioner has failed, pursuant to 28 U.S.C. § 2254(d), to establish he is entitled to relief on this issue.

While not addressing the use of a stun belt *per se*, the United States Supreme Court has, on several occasions, "recognized that certain practices pose such a threat to the 'fairness of the factfinding process' that they must be subjected to 'close judicial scrutiny.' *Estelle v. Williams*, 425 U.S. 501, 503-504, 96 S.Ct. 1691, 1692-1693, 48 L.Ed.2d 126 (1976)." *Holbrook v. Flynn*, 475 U.S. 560, 568, 106 S.Ct. 1340, 1345, 89 L.Ed.2d 525 (1986).

In *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the Supreme Court held that binding and gagging an "obstreperous defendant" was constitutionally permissible to maintain courtroom order, but only as a last resort. Thereafter, in *Deck v. Missouri*, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), the Court held "that the Constitution forbids the use of visible shackles during the penalty phase, as it forbids their use during the guilt phase, *unless* that use is 'justified by an essential state interest' - such as the interest in courtroom security-specific to the defendant on trial." In *Holbrook*, 475 U.S.

560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), the Court held the conspicuous, or at least noticeable, deployment of security personnel in a courtroom during trial is not the sort of inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential state interest specific to each trial. In rendering the decision in *Holbrook*, the Court articulated the role of a federal court in reviewing a constitutional challenge to courtroom security issues arising from state-court proceedings, stating:

> All a federal court may do in such a situation is look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over.

*Id.*, U.S. at 572, S.Ct. at 1347.

In this particular case, the record is clear that the stunbelt was not even visible to the jury. Since the jury could not see the stunbelt, Petitioner has not shown either that the use of the stunbelt was "inherently prejudicial" or that he was actually prejudiced from the use of the stunbelt, thereby depriving him of his constitutional right to a fair trial. Accordingly, this Court finds Petitioner has failed to establish that the Oklahoma Court of Criminal Appeals' adjudication of this issue was contrary to, or an unreasonable application of, clearly established Federal law as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief herein.

## 11. Cumulative Error

In Petitioner's final ground for relief, he claims the cumulative effect of the aforementioned errors warrant the granting of habeas relief herein. Cumulative error is present when the "cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *Duckett v. Mullin*, 306 F.3d 982, 992 (10th Cir. 2002) (quoting *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990)). "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Id.*

In considering this issue on direct appeal, the Oklahoma Court of Criminal Appeals found:

> . . . .[Petitioner] contends the aggregate impact of the errors in this case warrants reversal of his convictions and at the very least modification of his death sentence. This Court has repeatedly held that a cumulative error argument has no merit when this Court fails to sustain any of the other errors raised by [Petitioner]. However, when there have been numerous irregularities during the course of a trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial.
>
> Looking at both stages of trial, separately, we find certain errors did occur. However, when such errors are considered singularly and collectively, they were not so egregious or numerous as to have denied [Petitioner] a fair trial. Therefore, no new trial or modification of sentence is warranted and this assignment of error is denied.

*Phillips*, 989 P.2d at 1049.

In considering cumulative error, the Tenth Circuit has indicated a reviewing court should conduct the same inquiry as for individual errors – were the defendant's substantial rights affected; with the focus being on "the underlying fairness of the trial." *United States v. Woods*, 207 F.3d 1222, 1237-38 (10th Cir. 2000). Having reviewed the entire state court records, this Court recognizes that the Oklahoma Court of Criminal Appeals found errors occurred during Petitioner's trial. The Constitution does not, however, guarantee an error-free, perfect trial. *See*, *United States v. Hastings*, 461 U.S. 499, 508-9, 103 S.Ct. 1974, 1979, 76 L.Ed.2d 96 (1983). Based on the overwhelming evidence of Petitioner's guilt, this Court finds that the "judgment was not substantially swayed by the errors." Therefore, this Court finds that the Oklahoma Court of Criminal Appeals' evaluation of the impact of the trial court errors was not contrary to or an unreasonable application of clearly established federal law. Accordingly, this claim for relief is also denied.

## VI. CONCLUSION

After a thorough review of the Petition for Writ of Habeas Corpus, the Respondent's Response, Petitioner's Reply, and the state court records filed herein, this court finds Petitioner has failed to establish that he is currently in custody in violation of the Constitution, laws or treaties of the United States as required by 28 U.S.C. § 2254(a). Additionally, for the reasons set forth herein, Petitioner's request for an Evidentiary Hearing is denied. For the reasons stated, the Petition for Writ of Habeas Corpus is denied.

**ACCORDINGLY IT IS HEREBY ORDERED THAT:**

1.  Marty Sirmons is substituted for Gary Gibson as the party Respondent and the Court Clerk is directed to note such substitution on the record.

2.  Petitioner's request for habeas relief (Dkt. # 18) is denied.

**It is so ordered on this 9th day of April, 2008.**

James H. Payne
United States District Judge
Eastern District of Oklahoma